## TERRELL v. KIRKSEY.

1. Upon the sale of a large tract of land, consisting of a number of parcels of land, as surveyed by the government, at a gross price, and not by the acre, the vendor is not responsible for a deficiency of quantity, unless he is guilty of a fraudulent concealment of the true quantity.

27

Error to the Court of Chancery sitting at Linden.    Before the Hon. A. Crenshaw.

THE bill was filed by the plaintiff in error, and charges, that he purchased a tract of land of the defendant, at the price of $20 per acre, which is described by its designation at the land office.    That the defendant represented that the tract contained six hundred acres, and relying on his representations, and having no other information on the subject, he purchased the land and executed his notes for $12,000, payable in three annual instalments, all of which he has paid except about the sum of $600.    The bill further alledges, that the said tract contained but 564 5-100 acres, as ascertained by the United States government, and private surveys, and that the defendant knew of this deficiency in the quantity of the land, at the time of the sale, and did not disclose it, nor did he exhibit the certificates in his possession, showing the deficiency, or in any manner induce complainant to believe, that the several sub-divisions, contained less than the usual number of acres, according to the governmental survey. The prayer of the bill is for a recovery of the excess, paid over and above the true quantity of the land, and for an injunction.

The defendant denied that the sale was made by the acre, but at the gross price of $12,000.    He denies that he represented it as containing 600 acres.    He admits that he had understood that the land in that neighborhood fell short of the requisition of the law, and did not contain 640 acres to the section, and he therefore believed that the tract contained less than 600 acres; but had not in his possession the certificates of the register or the letters patent, showing the true quantity.    He denies that he represented the tract to contain 600 acres, but on the contrary, that he informed him the sections did not hold out, and that the tract contained less than 600 acres.    He denies all fraud, and insists it was a fair sale of the land at a gross price, and not a sale by the acre.

Much testimony was taken, for which, so far as it is important, see the opinion of the court.

Terrell v. Kirksey.

The chancellor dismissed the bill, which is the matter now assigned as error.

J. W. HENLEY and W. M. BROOKS, for plaintiff in error, contended, that if it did not appear that it was in express terms a sale by the acre, still it will not amount to a contract at hazard, unless the evidence clearly, and unequivocally establishes it. Blessing v. Beattie, 1 Rob. Va. 301; Quesnal v. Woodlief, 6 Call, 218; Jolliff v. Hite, 1 Id. 301; Hundley v. Lyons, 5 Mum. 342; Keytons v. Bradford, 5 Leigh, 48.

They also cited Hill v. Buckley, 17 Ves. 394; Glover v. Smith, 1 Dess. 438; Duval v. Ross, 2 Mum. 290; Bruin v. Erskine, 5 Leigh, 59; Moore v. Clay, 7 Ala. 750; Barnett v. Staunton & Pollard, 2 Id. 182; Cullum v. Br. Bank at M. 4 Id. 21; Van Arsdale v. Howard, 5 Id. 601; 1 Story's Eq. 166, § 154, 155.

MANNING, contra, contended, that it was not a sale by the acre, but for a gross price, and that there was no fraud. He cited Powell v. Clark, 5 Mass. 355; Foley v. McKeown, 4 Leigh, 627; Dayne v. King, 1 Yeates, 322; Mann v. Forbes, 2 Johns. Rep. 40.

COLLIER, C. J.—Fraud, it is said, is not to be presumed, but must be established by proof. Not, however, by mere circumstances of suspicion leading to certain results, but if not by positive and express proof, at least by circumstances affording strong presumptions. If one person makes a representation to another who is going to deal in a matter of interest, *upon the faith of that representation,* he shall make it good, if he knew it to be false. But to induce the interference of equity in such a case, it is not enough to establish the fact of misrepresentation; it must also be shown to be in a matter important to the interests of the other party, and that it actually did mislead him. For if such was not the character of the misrepresentation, no prejudicial consequences resulted from it. A misrepresentation may be as well by deed or acts as by words, by artifices to deceive, as well as by positive assertions. The affirmation of a falsehood, without any precise knowledge on the subject, is

equally in morals and law, as unjustifiable as the assertion of what is known to be positively false. So, if a party innocently misrepresents a fact by mistake, the same consequences follow; for it operates as a surprise and imposition on the other party. But a misrepresentation in a matter of opinion and fact, equally open to the inquiries and observation of both parties, and in regard to which neither can be presumed to trust the other, unless it be a mere contrivance of fraud, in cases of peculiar relationship or confidence; or where the other party has justly reposed upon it, and has been misled, furnishes no ground for the interference of equity. But fraud is not only deduced from *suggestio falsi*, but is inferrable from *suppressio veri*. To constitute the latter, there must be a suppression of facts which one party is under a legal or equitable obligation to communicate, and in respect to which he cannot be innocently silent; because the other has a right not merely *in foro conscientiæ*, but *juris et de jure*, to know. In general, the full and free consent of a party must be given in order to make a contract binding upon him; hence it is said, if consent be obtained by meditated imposition, circumvention, surprise, or undue influence, it is to be treated as a delusion, and not as a deliberate and free act of the mind. See 1 Story's Eq. 199 to 227; Juzan et al. v. Toulman, 9 Ala. Rep. 662; Chit. on Con. 223, 3d Am. ed.; Laidlaw v. Organ, 2 Wheat. Rep. 195. This view of the law, in respect to a fraudulent representation or suppression of material facts, and the consequences resulting from it, is in perfect harmony with the citations made at the bar from our own decisions, when these are considered in reference to the facts of the cases. Perhaps in some one or more of them, detached sentences may be found, which assert the obligation of the vendor to make a more full and frank disclosure of every matter that can influence the determination of the vendee; but if this be so, a limitation will be found in what precedes or follows, or the subject to which the remark was applied. We will hereafter consider whether the evidence adduced at the hearing, shows that fraud is imputable to the defendant, according to the principles we have stated, and in the meantime proceed to the examination of the law

where there is a deficiency in the quantity of land sold, irrespective of the question of fraud.

In Dozier v. Duffee, 1 Ala. Rep. N. S. 320, a sale was made of several contiguous tracts of land, and adding in a bond for title, after the description of each tract, so many acres, "more or less," but without stating at the close of the description, the aggregate number of acres : *Held*, that there was no stipulation on the part of the vendor of the number of acres sold, and there being no evidence of fraud, there could be no reduction in the purchase money for a deficiency in quantity. See Minge v. Smith, 1 Ala. Rep. N. S. 415, and citations in opinion. So, where lands are sold by the quarter section, according to the survey under the authority of the federal government, at so much *per acre*, and bonds are given for the payment of the purchase money, the purchaser cannot claim a deduction for a deficiency in the quantity of the land—there being no fraudulent concealment or misrepresentation on the part of the vendor. Perkins's ex'rs et al. v. Winter's adm'x, heirs, et al. 7 Ala. Rep. 854 ; Capshaw et al. v. Fennell, 12 Ala. Rep. 780.

In a contract for the sale of land as containing a specific number of acres, the party prejudiced is entitled to compensation for a deficiency or excess in quantity, beyond what may be reasonably imputed to small errors from variations of instruments or otherwise ; and is not precluded in equity from inquiring into what was the real contract by the words "more or less," inserted in the deed of conveyance. But where the contract, as understood by the parties, is to sell a tract of land as it may contain "more or less," the purchaser takes it at the risk of *gain or loss, by deficiency or excess in the quantity supposed ;* and neither can coerce the other to make compensation. Jolliffe v. Hite, 1 Call's Rep. 301. In Anthony v. Oldacre, 4 Call's Rep. 489, the vendor sold a tract of land "whereon he formerly lived, supposed to contain 300 acres, more or less, as he bought it," but which he had previously surveyed and found to be deficient in quantity : *Held*, that the purchaser was entitled to a deduction, although he had paid part of the purchase money after he had discovered the deficiency, and gave a new bond for the balance, declaring he would endeavor to obtain compensation

for the loss. This, however, was the case of a representation knowingly false, and consequently a fraud on the vendee.

Where a vendor advertised a tract of land for sale, as containing about 800 acres, and the vendee purchased at £4 per acre, expecting it would contain full that quantity, (the vendor having asserted his belief thereof,) and thus induced the vendee to accept a deed for the same, as containing 800 acres, more or less. It appeared that the tract contained little more than 608 acres, so that both parties were mistaken in the quantity; and chancery afforded the relief to the vendee. Quesnell v. Woodlief, 6 Call's Rep. 218. But although the purchaser of a tract of land promises to pay a certain sum *by the acre*, yet if he also agree to take it by the patent, or survey previously made, (in the absence of fraud on the part of the vendor,) he must be understood to risk the quantity; and therefore is not entitled to any compensation for deficiency. Fleet v. Hawkins, 6 Munf. Rep. 188. So, the conveyance of a particular tract of land without specifying quantity, does not bind the vendor to warrant a particular number of acres, if he has not falsely represented or concealed facts within his own knowledge; although both parties may have expected (judging from documents and other evidence) that the number of acres was greater than was indicated by a subsequent survey. Tucker v. Cocke, 2 Rand. Rep. 51. And where a sale is made by the tract, or the quantity is stated merely by way of description, chancery will not afford relief in the absence of fraud, upon the ground that there was a mistake in the number of acres. Harrison v. Talbot, 2 Dana's Rep. 261; Foley v. McKeown, 4 Leigh's Rep. 627. Whether a sale be *by the acre*, or *in gross*, is a question of intention to be collected from the circumstances of the transaction. Keytons v. Brawford, 5 Leigh's Rep. 39.

In Stebbins v. Eddy, 4 Mason's C. C. Rep. 414, a sale was made of a farm upon a contract at a definite sum *per acre*, to be ascertained by measurement: afterwards the parties agreed to waive a survey, and the purchaser took the farm at the gross sum of $2,500, supposing it to contain fifty acres, on the representation of the seller; and in the deed of conveyance, the land was said to be forty-seven and an half acres, "more or less:" *Held*, that as the vendor was not

guilty of any fraud, but only expressed his belief *bona fide,* the purchaser was not entitled to any relief in equity, although the quantity appeared to be but forty and an half acres, upon subsequent measurement—the local boundaries of the farm being known to both parties. So, where a sale is made at an agreed price *per acre,* or even at a gross sum, upon a positive representation of quantity by the vendor, equity will relieve the party injured by the mistake. But in the absence of fraud the law is otherwise, if the statement of quantity be a mere matter of description, and not of the essence of the contract; as where the contract contains the words so many acres, " more or less," or " containing by estimation," *&c.;* for in such case, the purchaser takes the risk of the quantity. See also Cowger v. Gordon et al. 4 Blackf. Rep. 110, 231; Doyle et al. v. Knapp, adm'r, 3 Scam. Rep. 338; Duvals v. Ross, 2 Munf. Rep. 290; Weaver v. Carter, 10 Leigh's Rep. 37; Blessing's adm'rs v. Beattie, 1 Rob. Rep. 287; Crawford et al. v. McDaniel, 1 Rob. Rep. 448; Neal v. Logan, 1 Grat. Rep. 14; Mann v. Pearson, 2 Johns. Rep. 27, 40; Butterfield v. Cooper, 6 Cow. Rep. 481; Veeder v. Fonda, 3 Paige's Rep. 94; King v. Hamilton, 1 Pet. Rep. 311.

The answer is a direct denial of the allegations of the bill —declares that the defendant was ignorant of the extent of the deficiency in the lands he had sold the plaintiff, or of the several tracts which compose them—insists that he informed the plaintiff, the subdivisions did not contain the usual quantity—denies all misrepresentation or suppression of facts, or fraud in any other form. Under this state of the pleading, it is incumbent on the plaintiff to make out his case by proof.

We think the evidence altogether fails to show, that the defendant stipulated to sell six hundred, or any other specific number of acres, or that he was advised how much the half quarter sections fell short of the statute quantity. True, the plaintiff stated to the defendant, before he began to examine his lands, that he would not give for them above $20 *per acre,* and would not look at them unless the defendant would sell at that price. This may serve to show that the plaintiff's *maximum* limit, at the time he entered upon the

negotiation ; but it cannot be assumed that the defendant assented to it. The defendant had stated his price to be $25 the acre, to which plaintiff answered that he would not give more than $20, and after much hesitation, defendant replied, "well, we will (or can) go and look at it any how." This reply, we think, cannot be regarded as the defendant's assent to the sum named, but rather indicating a desire that the plaintiff should examine the land, and if it pleased him, then adjust the price—hoping perhaps, that it would prove more desirable than the plaintiff supposed.

Previous to the sale to the plaintiff, the defendant said, his price for the land was $20 *per acre*, but also said, he must have twelve thousand dollars for the tract, although it might fall short in quantity. When the draftsman of the agreement inquired of the parties whether he should insert the number of acres, the defendant answered in the negative—saying he should state $12,000 as the aggregate amount of purchase money, to which the plaintiff made no objection. Upon the defendant informing the plaintiff that the lands fell short in quantity, he remarked that a few acres would make no difference, without making any inquiry in respect to the deficiency.

It cannot be inferred that the defendant intended to sell his land at an agreed price per acre, but rather for an aggregate sum, without reference to quantity. This is indicated by his declarations previous to the sale, and what he said in answer to the inquiry of the draftsman of the contract. Nor is this conclusion weakened by what the defendant said subsequent to the sale, as to the price at which he had sold. True, one witness states, that the defendant informed him he was to receive $20 *per acre*, while others testify, he not only sold for $20, by the acre, but added, he informed the plaintiff the land was deficient in quanty, who replied, a few acres would make no difference, he would take it at $12,000, and for this sum the sale was made. This testimony so far from overbalancing the answer, tends rather to sustain it, except as to the evidence of the single witness, which cannot outweigh the defendant's denial.

Conceding that it was the duty of the defendant to have given to the plaintiff all the information he possessed in re-

Terrell v. Kirksey.

spect to the quantity of the land, and it does not appear that he withheld any thing. True, one witness testifies that the defendant was present when a survey was made, in 1833, but the individual at whose instance the survey was made, proves the reverse, and other persons whose depositions are in the record, do not testify to his presence, though they speak of others who were there. This testimony, instead of showing that the defendant acquired a knowledge of the quantity, at the time referred to, strongly inclines to establish the negative.

In respect to the generality of the knowledge of the deficiency in the neighborhood, the proof of it was objected to by the defendant, and we incline to think was incompetent, as a predicate from which to infer that the defendant had such information, and could, had he thought proper, have informed the plaintiff how much each half quarter section was short of the usual quantity. But if admissible, it must be altogether too weak to override the answer, which contains an explicit denial upon this point. Besides, these witnesses who testify to common report, are not agreed among themselves as to the precise quantity each half quarter was generally understood to contain, and thus it appears, that although the fact of a deficiency was known, the extent of it was unsettled.

There is then an absence of proof to show either a *suggestio falsi* or *suppressio veri*, on the part of the defendant, one or the other of which is essential to constitute fraud in the sale. If the plaintiff was not aware how much the land fell short of containing the quantity indicated by the subdivisions, and supposed it would reduce the aggregate below what he was willing to take at $12,000, he should have inquired into the deficiency. Such an inquiry was suggested, if not invited by the remark which the defendant made to the plaintiff, and it may be questioned, whether the failure to prosecute it, does not, in the absence of fraud, preclude all relief in equity.

The impression of the witness, who was present at the sale, and who wrote the contract, that both the vendor and vendee supposed the lands contained six hundred acres, is

28

entitled to but little consideration against the answer, which affirms that the defendant had heard and supposed that there was a deficiency, and so informed the plaintiff, but was not advised of the extent of it. That the plaintiff may have thought that he was obtaining that quantity of land, is altogether probable; but looking at the answer and proofs, such an inference is not allowable as against the defendant. The defendant (as he said) asked $25 *per acre* for the land—informed the plaintiff that it was short, (as he expressed it,)—that he must have $12,000 for it—directed the draftsman of the contract to state that sum as the price, but to say nothing of the number of acres. By the term "short," it must be understood that the several tracts purchased contained less than six hundred acres, and not merely less than the government surveys usually indicated. How much less, (if any,) the defendant declares that he is wholly uninformed. Upon the ground then of mutual mistake, the plaintiff is not entitled to relief; for whatever the defendant may have supposed in respect to the deficiency, we have seen that he is not chargeable with fraud, and the facts establish, that he stipulated with the plaintiff for a sale at $12,000, without reference to quantity. We have thus considered all the questions which seemed to us to be suggested upon the record. Our conclusion is, that the decree of the chancellor is conformable to law, and it is therefore affirmed.