## JOHN KERR v. JACOB KUYKENDALL.

1. REAL ESTATE—WHAT IS A SECTION OF LAND.—Six hundred and forty acres is the strictly legal complement of a section. Yet it is well known that not one section in ten, contains that quantity. Some contain more, some less, but they are sections, nevertheless.

2. REAL ESTATE—CONVEYANCE OF TRACT—DEFICIT.—A conveyance of a particular tract, without specification of quantity, does not bind the vendor to warrant any number of acres, although there may have been an expectation founded on documents that the number of acres would be as great or greater than it turned out to be on a subsequent survey.

3. SAME—TRACT SOLD IN GROSS—DEFICIT.—Where a specific tract is sold for a sum in gross, the boundaries of the tract control the description of the quantity, and neither party can have a remedy for an excess or deficit.

4. WRITTEN CONTRACTS—INADMISSIBILITY OF PAROL EVIDENCE.—Where parties have deliberately put their engagement in writing, it is conclusively presumed that the whole contract and the entire extent of their undertaking were reduced to writing, and oral testimony of a previous contemporaneous or subsequent colloquium is rejected as it would tend to substitute a new contract for the one really agreed on.

Appeal from the chancery court of Panola county. CLAYTON, J.

The facts appear in the opinion of the court.

*White & Chalmers*, for plaintiff in error.

We insist that the decree is erroneous and must be reversed for two reasons:

1st. Because the court below erred in permitting the written contract to be varied by parol proof.

2d Because under the facts of the case as developed by the pleadings and proof, defendant was not entitled to the relief obtained.

1st. The contract between the parties was reduced to writing and it is wholly contained in the title, bond and notes. By the latter, the defendant promised to pay a certain sum of money. By the 'former, the complainant obligated himself to make and deliver a good deed to section 32, upon the payment of said notes.

" Section 32 " does not mean 640 acres of land, though it is true that a section usually contains about that number. " Section 32 " means that particular tract or parcel of land contained between, and embraced by certain well defined lines, which, upon the maps of the original survey of the Chickasaw Cession by the government of the United States, numbered and designated as " Section 32."

The particular piece of ground thus bounded and numbered, is named " Section 32," just as the area embraced by the boundary lines of Panola county, is named " Panola county "   " Section 32" is the name of a piece of ground in the Chickasaw Cession.   " Section 32 " constitutes words of locality, and not of quantity.

" Although 640 acres make the full complement of a section of land, yet we know, as a matter of public notoriety, that not one in ten, contains exactly that quantity." Fulton v. McAfee, 5 How., 751.

There is no latent nor patent ambiguity to be explained. While the parol proof is under certain circumstances admissible to explain ambiguities or omissions in written instruments, it is never admissible to vary the legal construction of language. Anderson v. Bacon, 1 Marshall (Ky.) R.; Caldwell v. Caldwell, 1 J. J. Marshall, 53.

While parol evidence is sometimes admitted to vary solemn written instruments, upon the ground of mistake, it is always done with great caution. The mistake must clearly appear. Lord Hardwicke says it must be established " by the strongest proof possible."

Lord Thurlow says it must be the strongest and most irrefutable proof, and he says. " that there is no. instance of its prevailing against a party insisting that there was no mistake." Lord Irnham v. Child, 1 Bro. C. C., 92; 1 Vesey, jr., 241; 1 Sugden on Vendors, 188, and note; Carneal v. Wilson, 14 Ark., 487; Churchill v. Rogers, 3 Monroe, 82; Morris v. Morris, 2 Bibb; Baugh v. Ranney, 2 Monroe, 156.

The fact that there was a mistake, is expressly denied by complainant under oath, and there is nothing inconsistent with this statement in the proof.

2d. But even the parol proof as admitted, does not establish a case as would justify the decree of the chancellor below.

The mistake, if any, was committed by the defendant, about a matter, in relation to which the least inquiry would have set him right, and it is well settled that equity will not relieve against a mistake about a matter which could have been ascertained by an exercise of reasonable diligence.

If a man is too indolent or too indifferent to show reasonable diligence in his own contracts, he must suffer the consequences. Trigg v. Read, 5 Humph., 541; 1 Story's Equity Jur., § 136, p. 171; Taylor v. Fleet, 4 Barbour, 95.

Against such a mistake there can be no relief. Stebbins v. Eddy, 4 Mason, 414; Pringle v. Samuels, 1 Little, 44; Brown v. Parish, 2 Dana, 9; Phipps v. Tarpley, 24 Miss., 597; Moore, administrator, v. Vick, 2 How., 746; Dunlap v. Dunlap, 12 Wheaton, 574; 2 Randolph, 51.

P. gave title bond to M. to convey lot No. 78, in township of Lysander, containing 600 acres. Held, that he complied with condition of bond by giving deed to lot No. 78 in said township, though upon actual survey, it contained but 421 acres. Mann v. Pearson, 2 Johns., 36; Favre v. Martin,

7 N. Y. (3d Selden), 210; Northrop v. Summey, 27 Barbour.

Mistakes as to where boundary lines run may be corrected, but not as to quantity of land. Voorhies v. DeMeyer, 2 Barbour, 37; Stebbins v. Eddy, 4 Mason, 414; Allison v. Allison, 1 Yerger, 16; 5 Mass., 535. See also a very strong case in our own state, Kerr v. Calvitt, Walker's (Miss.) R., 115.

*Walter & Scruggs*, for defendant in error.

Did the court below err in hearing testimony to show that complainant sold 640 acres of land at $3 per acre, and the conversations of the parties on this subject at the time of sale. Parol evidence is always admissible to show want of consideration, fraud, mistake, deceit, mental imbecility, want of delivery of an instrument. 1 Greenl. Ev., 284; Wren v. Hoffman and wife, 41 Miss.., 620.

This evidence is always admissible to explain and even sometimes to contradict the recitals of fact in an instrument. You may show that land described as being in one county is actually in another. 1 Greenl., Ev., 285; Rex v. Wickham 29 Common Law Rep., 160. This evidence is admissible to ascertain the nature and qualities of the subject to which a written instrument refers. 1 Greenl. 286; Moore v. Vick., 2, How., 784; Saynes v. Stutham, 3 Atk., 388; Winch v. Winchester, 1 V. & B., 375; Oliver v. Bell, 4 Rawle, 141; Campbell v. McClenehan, 6 S. & R; Gillespie v. Moon, 2 Johns. Ch. R., 585; Harris v. Jus & Co., 18 Ohio, 116 490; 8 Humph., 230; 11 Ala., 107; 2 Bibb., 82.

As to the second point in this case, conceding that his proof sustains his defense, is the defendant entitled to relief? We answer unhesitatingly, yes.

If the purchaser cannot get what he contracted for, specific performance will be decreed against him, but he will be allowed compensation for the difference in value between what he will get and what he contracted for. Halsey v. Grant, 13 Vesey, 77; Guest v. Hornfray, 5 Ves., 818; Matlock v. Buller, 10 Ves., 306; McQueen v. Faryebar, 11 Ves., 467. See the case of Seton v. Slade, 2 Leading Cases in Equity, 1, notes.

The rule is also well established, that a purchaser may, if he choose, compel a vendor, who has contracted to sell a larger estate than he has, to convey to him such interest as he is entitled to, with compensation for the deficiency. See Seton v. Slade, before referred to in note at page 24, and authority cited. Maltock v. Buller, 10 Ves., 315; Attorney General v. Day, 1 ib., 215; Waters v. Travis, 9 Johns., 450; Voorhies v. DeMeyer, 3 Sandford, 614; Jeppling v. Bowler, 1 Yerger, 289; Withersford v. James, 2 Ala., 170; Gillalem, 5 ib., 761; Jones v. Shackleford, 2 Bibb., 410; Evans v. Kingsburry, 2 Rand., 120.

Almost the precise points of this case have been adjudicated in our favor by other courts. Voorhies v. DeMeyer, 3 Sandford Ch. Rep., 614. This case was affirmed by the supreme court of New York on appeal. 2 Barbour, 37.

The case of Gillespie v. Moon, 2 Johns. Ch. Rep., 585, not only decided that parol evidence could be admitted to show that 50 acres more land was conveyed than was intended, but goes further than we ask in the case at bar, and ordered the 50 acres to be recovered. The same may be said of the case of Jeppling v. Bowler, 1 Yerger, 289. And, as to this matter, we can confidently point to every authority before cited by us. 1 Story Eq. Jur., § 770.

A well known principle in equity, is that hard and unconscionable contracts or bargains will not be enforced in chancery, by decrees for specific performance. Daniel v. Frazier, 40 Miss., 508; 1 Story Eq., 750.

Simrall, J. :

On the 12th day of January, A. D. 1856, John Kerr sold and agreed to convey a parcel of land to Hartsfield & Kuykendall. The contract is embodied in a bond for title, and so much as is material in this controversy are embraced in these clauses:

" Hartsfield & Kuykendall have this day purchased of the said John Kerr, section 32, township 8, range 7, west, in Panola county, and agreed to pay therefor the sum of nine

teen hundred dollars." This was divided into installments (except the cash payment) of one, two and three years, of $480 each, interest from date at 6 per cent.

The several installments have been paid, except the the last. To enforce this, John Kerr filed his bill in chancery, claiming to charge it as a lien on the land, tendering a deed with his bill to Kuykendall, who owned the entire interest in the purchase, by assignment from Hartsfield.

The answer makes as a defense, that the respondent and Hartsfield supposed and believed that the tract was a full section of 640 acres; that they bought the land by the acre, and made their notes, and the cash payment, on the basis of 640 acres; that on subsequent survey it turned out that the tract contained 458 18-100 acres, and was not a full section; that respondent has overpaid. The answer is made in this respect a cross-bill, and the relief is asked that a title according to the terms of the bond may be made, and the note canceled and be declared null.

Was this a sale in gross or by the acre?

Respondent in the answer says that Keer did not speak to him in relation to the tract of land; that it was but a fractional section. Nor did Kerr, or his agent, or any person, inform Hartsfield, or respondent, that said tract of land was but a fractional section. The contract in this particular is thus stated:

" Hartsfield & Kuykendall were to have the land at $3 per acre; that the notes were executed under the belief that said tract contained 640 acres, and they executed the notes under a mistake."

The cross-bill puts the specific interrogatories:

Whether the land was not sold at $3 per acre, and the number of acres, and if more than $3 per acre has not been paid, was not the note executed under mistake?

Kerr in his answer positively denies that the land was sold by the acre, but as a whole, for the sum of $4,920; that a transcript of the maps and surveys of the land office were in the probate clerk's office of Panola county, open for public

information, and this section was marked on the map as fractional; that it was well worth the price for which it was sold; that he is willing to take it back and refund the payments made to him, etc.

Kerr was a non-resident of this state. Craft, his agent, resided at Holly Springs, fifty miles from the land; both of the purchasers lived about two or three miles from it.

Hartsfield testified that he made the trade. He purchased the land by the acre; believed there were 640 acres; the calculations were made at $3 per acre; the note in suit was made in mistake, he believing there were 640 acres; nothing was said about a fractional section.

Kuykendall deposes that he believed, at the date of the purchase from Kerr, and of his purchase from Hartsfield, that there was 640 acres.

Wooton says there have been transcripts of the maps and surveys from the land office in the probate clerk's office, since 1849, to his knowledge, and that on the map this section of land is marked as containing 458 18-100 acres.

Hartsfield testified that he bought the land for himself and Kuykendall, at $3 per acre, and took a bond for title, which was in the usual form: " My (his) opinion is, that we were to have 640 acres; the calculation was made for 640 acres, at $3 per acre. "

Witness visited Craft, and offered to purchase the land. Craft seemed to be acquainted with the qualities of the land; don't recollect whether he said with regard to quality.

A section of land ordinarily conveys the idea of a mile square, including the area of 640 acres; but they are not uniformly of that size.

In the case of Fulton v. McAfee, 5 How., 762, authority was given under an act of congress to enter two sections. The entry was made on two parcels. which fell short, each, of 640 acres. It was argued that this was not within the act, because that authorized the entry of two sections, which meant an area of 640 acres each. To that view, the court responded: "That 640 acres is the strictly legal complement of

a section, yet it is well known that not one section in ten contains that quantity. Some contain more, some less, but they are sections nevertheless."

When the quantity is referred to as one of the elements of description, the vendor is not bound by the precise quantity named, unless he guarantees the quantity. Thus, in Phipps v. Tarpley, 24 Miss., 598, 1000 acres more or less were sold. The parties took the risk of excess or deficit. Neither would be entitled to relief, unless the excess or the deficit would be very considerable.

The case of Morse v. Vick, 2 How., 747, is very similar to this case. The description of the land sold was, certificate 879, for fractional section 10, township 16, range 4, east, containing 572 acres; also, certificate 892, northeast quarter of section 17, township 16, range 4, east, and west half of same section.

Certificate 879, for 572 acres, only contained by survey 464 94-100 acres. The half section, which according to the supposition of the parties ought to contain 330 acres, contained 272¼ acres. There was a deficit of the land, supposed by the parties to be sold and purchased, of 146 acres.

To the claim for credit on the purchase, on account of the deficiency, the court applied the doctrine : " A conveyance of a particular tract, without specification of quantity, does not bind the vendor to warrant the particular number of acres, although there may have been an expectation founded on documents that the number of acres would be as great or greater than it turned out to be on a subsequent survey. The only 'document' or evidence upon which these parties could found 'expectation' as to the quantity, was the certificates containing the 'sections and subdivisions thereof.'"

So in Winthrop v. Sumney, 27 Barb., 198, vendor and vendee were under a mutual mistake as to the southern boundary of the land sold, supposing the line to be a fence dividing from the adjacent proprietor. The fence, however, was some distance north of the true boundary, by reason whereof, the purchaser got only 39¾ instead of 67 acres. There was no fraud.

In Voorhies v. DeMeyer, 2 Barb., 47, to which we are referred by counsel for appellee, the vendor, supposing that he had a right to sell all the land embraced in the boundaries of lot 11 as surveyed by one Cockburn, agreed to sell and convey to the vendee, when in fact he had title to only 43½ acres—part of the land. The purchaser relied on the representatives of the vendor as to the quantity. This was an instance of relying on the statements and representations of the vendor in an important particular—and it would be but fair that he should be held to them. The court, however, take care to rest their opinion on the failure of title to a part, and the mis-information as to the actual boundaries of the lot, and distinctly recognize the general principle, that where a specified tract is sold for a sum in gross, the boundaries of the tract control the description of the quantity, and that neither party can have a remedy for an excess in deficit.

In the case in 2 Rand., 63, both parties relying on the fact that the land had been previously conveyed as containing 10,000 acres, upon the general representation of old surveys exceeding the quantity called for, confidently expected the real quantity would exceed the estimated quantity; and this belief operated on both in making the bargain. On a survey, there was a large deficit below the 10,000 acres. Held, that both parties took the risk, and that the vendor was entitled to no rebate from the price.

The contract, as settled between the parties and put in the writing, is a sale in the totality for an aggregate price. If the contract as thus reduced to writing does not prove fraud, accident or mistake, and truly embody and express the terms as agreed on, then it may be modified or corrected so as to correspond with the actual agreement; and parol evidence is admissible for the purpose of showing the discordance between the contract as written and that actually agreed on. Now the vendor and vendee are at issue, as to whether there was a sale in gross or per acre. This, perhaps, is stating the matter stronger than the pleadings warrant. The answer is, that the vendor said nothing, nor did Craft, his agent, about the

section—whether a full or fractional one. The purchasers, however, evidently thought and believed that they were getting what is usually comprehended in a section (about 640 acres). They could not have come to that belief, however, from anything said by Craft. Kerr, in his answer to the cross-bill, denies a sale by the acre, and avers that it was for the total tract. There is a failure to show, by the parol evidence, that the bargain was at $3 per acre. The evidence is abundant to prove that the purchasers "thought" and "believed" that the section contained 640 acres; but it falls short of establishing that Craft, the agent of Kerr, assented to a contract in that form.

When parties have deliberately put their engagements in writing, it is conclusively presumed that the whole contract, and the entire extent of their undertakings, were reduced to writing; and oral testimony of a previous, contemporaneous or subsequent colloquium is rejected, as it would tend to substitute a new contract for the one really agreed on. Wren v. Hoffman and wife, 41 Miss., 619, and authorities there cited.

The witnesses speak of no conversation or negotiation between Craft, agent, and these purchasers, or either of them. When the quantity of land embraced in the section was so much as alluded to, the most that is proved is, that a calculation of the amount was made at $3 per acre. It does not appear whether the calculation was mental, or by figures—whether made by Craft or the purchaser. The inference is, however, that if made by Craft, it would have been so stated. To present the application of the reasoning and principles on which we place our judgment to a state of facts not meant or intended, we add that where the contracting parties bargain with reference to the quantity of land, as for a tract containing so many acres, more or less, the vendor undertakes to sell, and the purchaser to buy, about or proximately the quantity specified. If, however, the tract contains greatly more or less than was in the mind and contemplation of the parties, relief may be had.

Such a contract includes a margin of some uncertainty—as to that, each takes the risk. If, however, there be a large excess or deficiency, it is not covered by the intent and terms of the bargain. This is the principle alluded to in the case of Phipps v. Tarpley, already cited.

We reverse the decree, and remand the cause, with directions to the court below to dismiss the cross-bill of Kuykendall, and render a decree in favor of Kerr, the complainant, in accordance with this opinion.

*Per Curiam,* on petition for re-argument:

In response to the petition for re-argument, we remark, we were inclined to hold, as an original proposition, that an agreement to sell a section of land, the ordinary area of a section (640 scres) was meant, or about that quantity; and if nothing else appeared—if there were a large deficit—relief should be extended to the purchaser.

But we felt ourselves constrained, by the authority of former adjudicatioas—especially Moore v. Vick, 2 How. In that case the fractional section recited that it contained 572 acres, and there was by survey a deficit of 108 acres. There was also a large deficit in the tract, described as " north-east quarter, section 17, township 16, range 4, east, and west half of same section." Certainly the purchaser would have the right to " believe " that these subdivisions contained the usual quantity. Yet it was said to be a purchase of the tracts by the gross, and relief was denied.

It is important, and we fully realize it—especially when decisions become rules of propriety—to adhere to them; the more strictly, too, when they have stood a long time.

We are of opinion on the facts, that this was a sale by the tract, and not by the acre; and that the conduct of the agent of the vendor was free from artifice, fraud, or misrepresention.

The bill of the complainant was in nature of a bill for specific performance, and subject to the principles applicable

to such bills. We concede, too, that such bills are addressed to the discretion of the equity judge; but in the exercise of a well defined, legal discretion, the chancellor may well refuse to carry out a hard, unconscionable, oppressive bargain, and leave the party to his legal redress. But there is nothing in the record showing this bargain to be in that category. It is not shown that the vendor's agent used any artifice, or held out a single inducement to entrap the defendants into the trade. It is not proved that the land was, when sold, or after-wards, worth less than the price agreed. The defendants declined to accept the offer made by the complainant to rescind. It does not come within that class of contracts, about which equity declines to interfere.

Whereupon, the re-argument is refused.