# Winston *v.* Browning.

*Bill in Equity to enforce Vendor's Lien.*

1. *Abatement of purchase-money of land ; when may be claimed.*—Where by the terms of a contract of sale of lands, the price is fixed or regulated by the quantity, and there is a material mistake as to the real quantity, the vendee is entitled to compensation for the deficiency; or when sued for the purchase-money, may claim compensation by way of abatement from it.

2. *Same ; when can not be claimed.*—Where, however, the contract is not for the sale of a specific quantity of land, but for the sale of a particular tract, or designated lot or parcel, by name or description, for a sum in gross, and the transaction is *bona fide*, a mutual mistake as to *quantity*, but not as to boundaries, will not entitle the purchaser to compensation, and is not ground for rescission.

3. *Written contract, how can not be varied.*—The writings by which such a contract is evidenced, in the absence of fraud or mistake in their execution, or any subsequent modification of the contract, are its sole expositors, and can no more be varied, contradicted, or explained by parol, in equity than at law.

4. *Execution on decree in chancery; when erroneous.*—A decree in a foreclosure suit, or bill to enforce a vendor's lien, ascertaining the amount of indebtedness, has the force and effect of a judgment; but execution can not issue until after sale and confirmation and decree ascertaining the balance due.

APPEAL from Chancery Court of Sumter.
Heard before JAMES COBBS, Esq., special chancellor.
The opinion states the case.

Thos. B. Wetmore, for appellant.

Cooke & Little, and Watts & Sons, *contra.*

BRICKELL, C. J.—The facts of the case as shown by the record, are, that on the 18th day of January, 1873, Anthony W. Dillard bargained and sold to the appellant James M. Winston, a tract of land situate in Sumter county, known as the "Lacy Place," with a gin stand on the place, for the sum of six thousand five hundred dollars, three thousand dollars payable in cash, and for the remainder, a credit until the first of January, 1874, was given. The land was subject to a mortgage executed by one Herndon, the vendor of Dillard. The note of Winston for the part of the purchase-money not paid in cash, it was agreed, was to be transferred to the mortgagee, so that on its payment, the lands would be freed from the encumbrance of the mortgage. The mortgage debt was due to the appellee Browning, and the note of Winston for the unpaid purchase-money, immediately on its execution, in the presence of Winston, was by Dillard, indorsed in blank, and delivered to the attorney of the appellee, and its application to the payment of the mortgage debt directed and promised. Dillard gave Winston his covenant, reciting that for the sum of six thousand five hundred dollars, he had sold him "my Elisha Lacy tract of land in Sumter county, containing 1060 acres more or less. And I agree and covenant with said James M. Winston, that I am seized of a fee simple title in and to said lands, and will make him a fee simple conveyance, free from all incumbrances of dower or otherwise to said Lacy tract, the numbers not now being at hand." On the 9th February, 1874, Dillard executed a deed to Winston, describing the lands as "the tract of land lying and being in Sumter county and State of Alabama, and known as the Elisha Lacy tract, consisting of one thousand and sixty acres more or less according to the last will and testament of said Elisha Lacy, and more particularly described as follows:" giving the numbers thereof according to the survey by the government, and from these numbers, the quantity of land was nine hundred and twenty-three acres. The lands are described in the will of Elisha Lacy, which was executed in 1860, and admitted to probate in 1862, as *containing about one thousand and sixty acres.* The conveyance to Dillard describes them, "as the Lacy tract of land, in township twenty-one, range three west, containing about one thousand and sixty acres, be the same more or less, the same being

(6)

that tract of land donated by Elisha Lacy, deceased, to his son Martin V. Lacy." By a survey of the lands made after the commencement of this suit, it was ascertained that the tract contained only nine hundred and twenty-three acres. Winston had known, and resided near the lands for many years before his purchase. The lands were assessed to Dillard for taxation in the years 1870, 1871, 1872, by numbers, the numbers indicating the quantity to be nine hundred and seventy-six acres, while it is stated in the assessment to be nine hundred and sixty acres. The bill is filed to enforce a lien on the lands, for the payment of the note of Winston, and the defense is a claim of an abatement from the note, for the deficiency in the quantity of the lands.

When by the terms of a contract of sale of lands, the price is fixed or regulated by the quantity, if there is a *material* mistake as to the real quantity, the vendee is entitled to compensation for the deficiency; or when sued for the purchase-money, may claim compensation by way of abatement from it. This is certainly true where the sale is of a specific quantity, or a sale by the acre, as it is usually denominated. *Minge v. Smith*, 1 Ala. 415; *Terrell v. Kirksey*, 14 Ala. 209; *Young v. Craig*, 2 Bibb, 270. "The reason is," said Judge STORY, "that each party is supposed to be regulated in his bargain by the real quantity, and if there be any mistake as to the real quantity, the one has more, and the other less, than what both intended, either in land or price. In such cases, the quantity conveyed constitutes an essential ingredient in the bargain, and is not mere matter of description. Equity, therefore, will correct the mistake, and put the parties in the situation in which they would have been, if the real facts had been known to them."—*Stebbins v. Eddy*, 4 Mason, 416. We have said a *material* mistake as to the quantity, for if the difference is so slight, that it makes no difference in the value of the lands, and it is apparent, if it had been known, there would have been no difference in price, it is immaterial, furnishing no ground for compensation.—1 Story's Eq. § 195.

But if the contract is not for the sale of a specific quantity of land—if it is for the sale of a specific tract, or a designated lot, or parcel, by name or description, for a gross sum, and the transaction is *bona fide*, a mutual mistake as to the quantity, but not as to the boundaries, will not entitle the purchaser to compensation, and would not be ground for a rescission.—1 Story's Eq. § 144; *Dozier v. Duffee*, 1 Ala. 320; *Capshaw v. Fennell*, 12 Ala. 780; *Frederick v. Young-*

[Winston v. Browning.]

*blood,* 19 Ala. 680; *Wright v. Wright,* 34 Ala. 194; *Stebbins v. Eddins,* 4 Mason, 414; *Mann v. Pearson,* 2 Johns. 37; *Morris v. Emmett,* 9 Paige, 168; *Smith v. Evans,* 6 Binn. 102; *Harrison v. Talbot,* 2 Dana, 258; *Noble v. Googins,* 99 Mass. 231; *Pickman v. Trinity Church,* 122 Mass. 1. If we look to the writings to determine the character of the contract between Dillard and Winston it is apparent the sale is of this latter kind—a sale, as it was called in the Roman law, *per aversionem*—" that is, for a gross sum to be paid for the whole premises, and not at a specified price by the foot or acre. In such sales the purchaser is entitled to the quantity contained within the designated boundaries of the grant, be it more or less, without reference to quantity or measure of the premises which is mentioned in the contract or conveyance."—*Morris v. Emmett, supra.* These writings, there being no allegation or proof of fraud or mistake in their execution, or of any subsequent waiver or modification of the contract they import, are the sole memorial and expositor of the contract, and parol evidence is as inadmissible in equity, as at law, to vary, contradict, or explain them.—*Frederick v. Youngblood, supra; Williams v. Hathaway,* 19 Pick. 387. The authorities we have cited, and others to which reference could be made, have settled the doctrine, "that whenever it appears by definite boundaries, or by words of qualification as ' more or less,' or ' by estimation,' or the like, that the statement of the quantity of acres in the deed is mere matter of description and not of the essence of the contract, the buyer takes the risk, if there be no element of fraud."—*Pickman v. Trinity Church, supra.* It is said by Chancellor KENT: "The mention of quantity of acres, after a certain description of the subject by metes and bounds, or by other specification, is but matter of description, and does not amount to any covenant, or afford any ground for the breach of any of the usual covenants, though the quantity of acres should fall short of the given amount. Whenever it appears by definite boundaries, or by words of qualification, as ' more or less,' or as ' containing by estimation,' or the like, that the statement of the quantity of acres in the deed, is mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud."—4 Kent, 467.

There was no representation of quantity made by the vendor, independent of the recital in the writings, nor is there any fact shown, which indicates that it was regarded as of the essence of the contract. The vendor and vendee

[Garner v. Bond, Adm'r.]

knew the lands by the designation of the *Lacy Place*, and knew its boundaries, that is, knew who were the adjoining proprietors. Each supposed that in quantity, it approximated one thousand and sixty acres, but no stipulation of quantity was made by the one, or sought by the other. A sale of the *Lacy Place*, the quantity uncertain, for a gross sum, the gin stand being included, was the contract made. Unless that contract is departed from, there can be no abatement of the purchase-money, because of the deficiency in quantity.

The decree of the chancellor is however erroneous in ordering that execution issue for the amount of the debt ascertained to be due from the appellant. In the absence of statutory provisions, a court of equity could not in a foreclosure suit—and a suit for the enforcement of a vendor's lien is analogous to a foreclosure suit—render any other decree than one barring the equity of redemption, or directing a sale of the mortgaged premises. If after a sale, there was an unpaid balance of the mortgage debt, it was recoverable only in action at law—the court could not direct that execution issue for it.—*Hunt v. Lewin*, 4 Stew. & Por. 138; *Orchard v. Hughes*, 1 Wall. 73. The statute now declares that the decree in a foreclosure suit, or on a bill to enforce a vendor's lien, ascertaining the amount of the indebtedness, shall have the force and effect of a judgment, but that execution must not issue, until after a sale, and its confirmation, and the balance due is ascertained by a decree.—Code of 1876, § 3908. The award of execution was premature, and the decree in that respect must be here corrected.

We do not deem it necessary to prolong this opinion by discussing the remaining assignments of error. We find nothing in them which would vary our conclusions. The decree of the chancellor, as corrected, will be affirmed.