[No. 8912. Department Two. December 21, 1910.]

FRED H. HYDE *et al.*, *Appellants*, v. HENRY PHILLIPS, *Respondent.*[1]

VENDOR AND PURCHASER—CONTRACT — SALE IN GROSS — ACREAGE— DEFICIENCY. A contract to convey certain legal subdivisions of land "containing 399 1-3 acres" the purchaser agreeing to pay "at the rate of $27.50 per acre, a sum in total of eleven thousand dollars," is a sale in gross, and the vendee is not entitled to a deduction in the price on a survey showing a deficiency of 31 acres, where it appears that the parties contracted in good faith, neither knew the exact acreage, and the land was not the only subject of the contract, some personal property and a lease of other lands being included.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered February 19, 1910, upon sustaining a demurrer to the complaint, dismissing an action for specific performance. Affirmed.

*H. J. Hibschman* and *N. W. Washington*, for appellants.

*John L. Dirks*, for respondent.

CHADWICK, J.—On the 16th day of September, 1908, the parties to this action entered into a contract for the sale of land, the parts of the contract material to our present inquiry being as follows:

"Witnesseth: That the party of the first part hereby sells and conveys to the party of the second part the following described real estate and personal property, to wit: The

[1]Reported in 112 Pac. 257.

north half (N. ½) of section nineteen (19), and the south-west quarter (S. W. ¼) of section eighteen (18), township twenty-six (26), all north of range thirty-one (31) E. W. M., containing three hundred and ninety-nine and one-third acres, all in Lincoln county, state of Washington;

"In consideration therefor the party of the second part hereby agrees to pay for the same at the rate of twenty-seven dollars and fifty cents per acre, a sum in total of eleven thousand dollars. In payment as follows: Two hundred dollars payable in cash, twenty-eight hundred dollars, on or before the first day of November, 1908, and the balance in three equal payments, payable annually or before at the option of the party of the second part. The deferred payments to bear interest at the rate of six per cent per annum. The party of the first part further sells to the party of the second part, for the consideration above mentioned, all the straw and one stack of hay now on the S. W. ¼ of sec. 18, and one superior drill. . . . The party of the first part further agrees to assign to the party of the second part all his right in and to a certain lease upon the N. W. ¼ of section 18, township 26, R. 31, to pay the rental for 1908, and to convey to the party of the second part his interest in the plowing done on said land."

The sum of $200 was paid when the contract was executed. Appellants took possession under the contract, and thereafter had the land surveyed. It was found to contain 358 acres, or 31 1-3 acres less than the area mentioned in the contract. In November, 1909, appellants tendered the sum of $7,286.95 in full payment for the land, being the whole amount due at the rate of $27.50 per acre, upon the acreage as ascertained by the survey. This tender was refused, respondent demanding the full sum named in the contract; that is, $11,000, less the $200 paid down and an existing mortgage of $2,000. This action was then brought to enforce specific performance of the contract and to compel the execution of a deed. From an order sustaining a demurrer to the complaint, plaintiffs have appealed.

There is but one question in this case, whether the sale was by the acre or in gross. It seems to be admitted that the

actual number of acres was unknown to either party at the time the contract was entered into. The complaint recites:

"That at the time of the execution of the agreement neither of the parties thereto knew the exact number of acres in said premises, and that the plaintiffs did not ascertain the same for a number of months after the execution of said agreement."

If the sale was made by the acre, and the difference held to be a material one, appellants would be entitled to an abatement of the purchase price in a sum equalling the difference between the number of acres mentioned in the contract and the amount ascertained by the survey. On the other hand, if it was a sale in gross, appellants would be held to the payment of the purchase price notwithstanding a deficiency in the area. Whether it was a sale in gross or by the acre depends upon the intention of the parties. In the case at bar we are held to an examination of the complaint and to a construction of the contract.

Where land is sold by reference to maps, plats, or government subdivisions, followed by the number of acres contained therein, the rule, as stated by Chancellor Kent, is as follows:

"The mention of quantity of acres after a certain description of the subject by metes and bounds, or by other specifications is but a matter of description, and does not amount to any covenant, or afford any ground for the breach of any of the usual covenants, though the quantity of acres should fall short of the given amount." 4 Kent, Commentaries (14th ed.), 467.

The rule deduced by Mr. Warvelle is as follows:

"Where the quantity of a tract of land is stated in the deed as well as the metes and bounds, the latter, if they can be ascertained with certainty, will control the location, although they contain less than the given quantity—the designation of quantity never being permitted to control the boundaries where they are clearly indicated. But where there is doubt as to the true description, such designation of quantity may be properly considered. As a rule, however, a recital in a conveyance of land that the tract contains a certain number of

acres will always, unless there is an express covenant as to quantity, be regarded as part of the description merely, and will be rejected if inconsistent with the actual area as ascertained by known monuments and boundaries. Such recital aids but does not control the description of the granted premises. The word 'about' so frequently employed in connection with statements of quantity, is generally regarded as a word of approximation only; it will not cover any material deficiencies." Warvelle, Vendors (2d ed.), § 381.

Brewster, in his work on Conveyancing, § 92, says:

"Courses and distances mentioned generally control the statement of quantity, the latter being considered, generally speaking, as less likely to be definite. A statement of quantity has little effect when the rest of the description is definite and accurate. . . ."

Devlin finds the rule to be:

"In the description of land it is usual, after the description by metes and bounds or subdivisions, to add a clause stating that the land described contained so many acres. But unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it cannot control the rest of the description. Neither party has a remedy against the other for the excess or deficiency, unless the difference is so great as to afford a presumption of fraud. Where an owner of a league of land, having sold off several tracts, executed a deed for the unsold balance, which described it as 'all' and singular a certain piece or parcel of land containing one thousand acres, situated and described as follows: 'In Harris county, and on Buffalo bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds'—it was held that the deed conveyed title to the whole of the unsold balance, although in excess of the number of acres mentioned." Devlin on Deeds, § 1044.

See, also, 13 Cyc. 635; 2 Washburne, Real Property, p. 672; 29 Am. & Eng. Ency. Law (2d ed.), 625, 628 .

Practically all of the cases where the term "more or less" is employed, are in point, for where the description is by metes and bounds, or by reference to fixed boundaries or subdivisions, the general rule is applied, but little if any importance being attached to the words "more or less." Reference to a few cases where the description was by government subdivision will not be out of place. A case is reported in 33 Iowa 110, where Ufford sued Wilkins, and the case turned on the construction of a deed to ·the southwest quarter of the northwest quarter, etc., followed by the words, "being forty acres." It was held:

"The rule is that when the *quantity* of land is mentioned in a deed as part of the description, it will be rejected if it be inconsistent with the actual area of the premises as ascer-· tained by known monuments or other certain description, where the tract is definitely described and limited, as in the present instance, according to the original survey, so that any surveyor can ascertain its contents, and if within the boundaries, according to the description, there be less or more than the supposed quantity of land, the grantee takes all included within the description. No more and no less, if the grantor had right to convey all. The grantee, in his purchase, must be considered as relying on the boundaries described, and not on the contents mentioned." *Ufford v. Wilkins,* 33 Iowa 110.

So, too, in *Kerr v. Kuykendall,* 44 Miss. 137, the description was "section 22," etc., and the price, $1,920, was calculated· · on a basis of three dollars per acre. A subsequent survey showed the section to be of less area. Applying the rule announced in *Fulton v. McAfee,* 5 How. (Miss.) 751, 762, "that 640 acres is the strictly · legal complement of a section, yet it is well known that not one section in ten contains that quantity. Some contain more; some less; . but they are sections nevertheless," the court held there having been no artifice, fraud, or misrepresentation, that the sale was in gross and not by the acre. In *Perkins' Exr's v. Winter's Adm'rx,* 7 Ala. 855, it was held:

"We are now brought to inquire, whether the complainants. are entitled to relief for the supposed deficiency, in the quan-

tity of the land purchased by the testator.    It has been held, that although the purchaser of a tract of land, promise to pay a certain sum *by the acre*, yet if he also agree to take it by the patent, or survey previously made (in the absence of fraud on the part of the vendor), he must be understood to risk the quantity; and therefore is not entitled to any compensation for deficiency.  .  .  .    In the case at bar, the land of which the testator was the purchaser, was sold by the quarter section, according to the survey made under the authority of the Federal government, and each quarter was supposed to contain one hundred and sixty acres—that being the proper size of such a subdivision.   By bidding it off at a certain sum per acre, the purchaser expected to pay for so much land, as the patent from the United States to the patantee, recited to be the number of acres embraced by each quarter section.   Neither party contemplated a survey in future; and if the tracts were larger than supposed, the purchaser would be entitled to the excess, or if less, he must stand by his bargain.   This view of the case, as it respects the assumption of fact, is sustained by the record, and the legal conclusion seems to us to result so clearly, from the authorities cited, as to make it unnecessary to amplify the point."

In *Austrian v. Dean*, 23 Minn. 62, the land was described as a legal subdivision containing twenty acres more or less. The land sold actually contained but 17.15 acres.   The purchaser brought suit for relief, claiming that the words "containing twenty acres more or less according to the government survey" amounted to a covenant that by the government survey there should have been twenty acres in the piece described.   It was held:

"Words expressing the quantity, in a deed of a tract otherwise definitely described, are held to be merely additional description, and are controlled by the definite calls in the deed, and, therefore, immaterial.   Being inserted merely as matter of description, and not for the purpose of covenant, it is not material, where there is no fraud or express covenant as to quantity, whether the quantity is more or less than that stated."

To take the case out of the general rule there must be an express covenant or some allegation of fraud or misrepresen-

tation.   There must be artifice and deceit or, as some courts
have held, the deficiency must be so great as to warrant a
court in saying that the deficiency amounts to a failure of
consideration.   There is no such allegation in the complaint
before us.

It is alleged that neither party knew the exact acreage,
which in itself is some confirmation of the assertion of the
respondent that it was a sale in gross and that quantity was
not of the essence of the contract.   In arriving at the inten-
tion of the parties—and that is the test to be applied in this
class of cases—we must look to the whole contract rather than
to a single recital.   The fact that the parties contracted in
good faith has been alluded to.   Another incident is that the
land was not the only subject of the contract.   There was
personal property, a lease of other lands was assigned, and
the interest of the vendor in certain plowing on the leased
land also furnished a part of the consideration which, as ex-
pressed in figures, amounts to more than would the estimated
acreage if sold at $27.50 per acre.   It would seem to be mani-
fest, also, that the intent of the vendee was to pay, and the
vendor to receive, the gross sum of $11,000.   These items are
all suggestive circumstances tending to show that the sale
was in gross.   While the words "twenty-seven dollars and fifty
cents per acre," as employed in the contract, are significant,
they are not controlling, as against the facts and circum-
stances outlined above.   29 Am. & Eng. Ency. Law (2d ed.),
629; *Kerr v. Kuykendall, supra; Terrell v. Kirkey,* 14 Ala.
209.

The complaint did not state a cause of action, and the
judgment is affirmed.

RUDKIN, C. J., CROW, MORRIS, and DUNBAR, JJ., concur.