[No. 32769. Department Two. August 12, 1954.]

T. A. CHEESMAN, *Respondent,* v. C. J. SATHRE *et al.,*
*Appellants.*[1]

[1]Reported in 273 P. (2d) 500.

*Shirley R. Marsh* and *John F. McCarthy,* for appellants.

*Ronald Moore* and *Jerome Walstead* (*Weiser & Bowles,* of counsel), for respondent.

DONWORTH, J.—This lawsuit grew out of a disagreement between two partners who jointly invented a hydraulic shock absorber device called a boomsnub, designed to prevent accidents caused by rigging failures on cranes equipped with heavy booms. The disagreement culminated in the execution by defendant partner of a licensing agreement purporting to convey to the other two defendants here all right to manufacture and sell the device, for which an application for a patent was then pending.

Defendants have appealed from an eight thousand dollar judgment for plaintiff entered on a jury verdict.

Plaintiff sued for damages he alleged he suffered as a result of a conspiracy between defendants to defraud him by ousting him from the Boomsnub Company, a limited partnership composed of plaintiff and defendant C. J. Sathre as general partners and six persons (not parties to the action) as limited partners.

In his complaint, plaintiff alleged that he and defendant Sathre were general partners under a limited partnership agreement doing business under the assumed name of Boomsnub Company; that defendants George R. Steele and Al Hauge were partners doing business under the name of Columbia Marine Steel Works, and that prior to September 19, 1952, the Columbia Marine Steel Works was manufacturing boomsnubs for the Boomsnub Company on a fixed

fee basis; that some time prior to September 20, 1952, the three defendants entered into a conspiracy to defraud plaintiff of money and property and to violate the terms of the limited partnership agreement by ousting plaintiff from the partnership business, thus depriving him of his rights and profits to be derived from a certain United States patent for which plaintiff and defendant Sathre had applied.

In the complaint, it was further alleged that, pursuant to the conspiracy, defendant Sathre ousted plaintiff from the partnership business of the Boomsnub Company and thereafter entered into an agreement with defendants Steele and Hauge by the terms of which defendants Steele and Hauge were given the exclusive right to manufacture, sell, and distribute boomsnubs; that the signing of this agreement between defendant Sathre and defendants Steele and Hauge was in violation of the terms of the limited partnership agreement, of which all defendants had notice and knowledge, and allowed defendants Steele and Hauge to manufacture, sell, and distribute boomsnubs under terms and conditions especially beneficial and profitable to each of the defendants and to the great loss of plaintiff.

Plaintiff's complaint prayed for damages of fifty thousand dollars against the defendants and each of them.

In his answer, defendant Sathre denied all of the material allegations of the complaint and alleged as an affirmative defense that, prior to September, 1952, the Boomsnub Company was in bad financial condition and was heavily in debt with no funds with which to further the sale of its product; that plaintiff and defendant Sathre discussed with defendants Steele and Hauge the feasibility of entering into an agreement under which Columbia Marine Steel Works would manufacture and sell boomsnubs on a royalty basis; that, on September 19, 1952, a royalty agreement was executed between the Columbia Marine Steel Works and defendant Sathre, acting on behalf of the Boomsnub Company, under which the Columbia Marine Steel Works was given the exclusive right to manufacture and sell boomsnubs for the whole life of the patent (until February 10, 1970),

with the Columbia Marine Steel Works assuming all of the cost of promoting and developing the boomsnub and agreeing to pay the limited partnership doing business as the Boomsnub Company a royalty of 7½ per cent of the gross sales price of all boomsnubs sold.

The affirmative defense also alleged that the agreement entered into by defendant Sathre in behalf of the Boomsnub Company with the Columbia Marine Steel Works was for the benefit of the plaintiff, defendant Sathre, and the persons who were limited partners in the Boomsnub Company, and that defendant Sathre had not conspired with the other defendants to oust and exclude plaintiff from the Boomsnub Company nor attempted to deprive plaintiff of any interest or benefit arising out of the manufacture, sale, or distribution of boomsnubs.

Defendants Steele and Hauge answered denying all of the material allegations of the complaint, but admitted that, on September 19, 1952, in accordance with a prior verbal agreement between the answering defendants and the partnership composed of plaintiff and defendant Sathre, in which prior negotiations and agreements plaintiff participated, defendants Steele and Hauge entered into a written agreement in which the limited partnership doing business as the Boomsnub Company granted to defendants Steele and Hauge the right to manufacture, sell, and distribute boomsnubs. Defendants Steele and Hauge also admitted that they were manufacturing, selling, and distributing boomsnubs in accordance with the terms of the agreement and were paying to the Boomsnub Company the royalties provided for in the agreement.

After a trial on the issues raised by the pleadings, the jury returned a verdict for plaintiff. Defendants moved for judgment notwithstanding the verdict or for a new trial, which motions were denied, and judgment was entered on the verdict. Defendants appeal, making fifteen assignments of error, eleven of them directed to instructions given or refused.

The judgment must be reversed and the cause

remanded for a new trial because of the refusal of the trial court to instruct that the alleged conspiracy had to be proven by clear, cogent, and convincing evidence. We have repeatedly held that a plaintiff in an action for conspiracy to defraud must meet the burden of proving his case by clear, cogent, and convincing evidence. *Harrington v. Richeson,* 40 Wn. (2d) 557, 245 P. (2d) 191, and cases cited therein. By proposing proper instructions and by taking exceptions to six improper instructions given, appellants preserved their right to urge in this court that the trial court erred in instructing the jury that the alleged conspiracy could be proven by a mere preponderance of the evidence. Unquestionably, the words "clear, cogent, and convincing" mean something more than a mere preponderance of the evidence. *Dovich v. Chief Consolidated Mining Co.,* 53 Utah 522, 174 Pac. 627.

Respondent concedes in this court that the instructions given were erroneous, and that the jury should have been instructed that the plaintiff had to prove his case by clear, cogent, and convincing evidence. But respondent asserts that the error was not prejudicial, saying that the existence of a conspiracy between appellants was so conclusively established by the evidence that reasonable minds could not differ upon the question, and consequently the jury would have arrived at the same verdict even if proper instructions had been given. Under such circumstances, respondent contends, this court should not be concerned with errors in instructions, citing *Ellefsen v. Wilt,* 36 Wn. (2d) 56, 217 P. (2d) 318, and a number of other cases on the same point.

Respondent's argument is based upon the false premise that under the evidence in this case the minds of reasonable men could not disagree on the question of the existence of a conspiracy. The case was submitted to the jury on extremely conflicting testimony on every issue involved. If the jury had chosen to believe appellants' testimony, that testimony would have supported a verdict for appellants. Therefore, this court cannot say, as respondent

would have us do, that the jury could have reached only one verdict regardless of the instructions given. Consequently, appellants are entitled to a reversal of the judgment and a new trial on the basis of the erroneous instructions.

 Before discussing appellants' other assignments of error in so far as they apply to issues which may arise on retrial of the case, we hold that the trial court did not err in denying appellants' motion for judgment notwithstanding the verdict. In passing upon such a motion, this court and the trial court must view the evidence in the light most favorable to respondent, giving him the benefit of all favorable inferences which reasonably may be drawn therefrom. Respondent's evidence, so viewed, is ample to warrant the denial of the motion for judgment n. o. v. The issues involved were questions for the jury to determine.

Since there must be a retrial of this case, it is necessary to discuss another ground of appellants' motion for new trial. Appellants urge, in support of their assignment that the court erred in denying their motion for a new trial, that the rule in this state is that:

"One partner can not sue another partner for damages without dissolution of the partnership or an accounting."

In support of that proposition, appellants cite *Stipcich v. Marinovich*, 13 Wn. (2d) 155, 124 P. (2d) 215, and cases therein cited.

 Respondent concedes that the general rule is that, before one partner can sue his copartner at law, there must have been a dissolution of the partnership and an accounting between them. Respondent asserts, however, that one exception to the general rule is that one partner may maintain an action against his copartner and others for damages arising out of a conspiracy between the copartner and others.

The question is one of first impression in this state. Appellants cite *Lachmann v. Benson*, 167 Ill. App. 85, as holding that a partner cannot maintain an action at law against his partner and others for conspiracy. In that case, plaintiff alleged that her partner and his coconspirator had sold

the partnership property, thus depriving her of her interest in the property. She recovered a judgment for damages. In reversing the judgment, the court said:

"We find as ultimate facts in this case that the property which is the subject-matter of this litigation was, at the time suit was commenced and prosecuted, owned by the plaintiff and one of the defendants as co-partners; that there has been no dissolution of said partnership or any settlement between said partners with reference to said partnership property and business; and that plaintiff has sustained no separate or individual damage."

The controlling factors in the cited case, as the court found them, were that the partnership was undissolved and plaintiff still retained her interest in the partnership while prosecuting the suit. Though we do not consider this case controlling here for reasons to be mentioned, the case is not out of harmony with the cases relied upon by respondent in so far as those cases require a dissolution of the partnership (either formally or by operation of law as a result of bringing a lawsuit) and a surrender of plaintiff partner's interest in the converted partnership property before a suit for damages can be successfully maintained.

Respondent cites fifteen cases (seven of them from California) which he contends hold that one partner may maintain an action at law for damages arising out of a conspiracy between a copartner and others. Thirteen of the fifteen cases on which respondent relies are cited and analyzed in annotations on the subject of "Actions at law between partners and partnerships" in 21 A. L. R. 21, 58 A. L. R. 621 and 168 A. L. R. 1088. Two later cases cited by respondent on the same point are *Boyle v. Smith* (from Mun. Ct. App., D. C.), 77 Wash. L. Rep. 417, 64 A. (2d) 428 and *Manry v. Hendricks*, 192 Ga. 319, 15 S. E. (2d) 434.

We have read with care all fifteen of the cases cited by respondent. There are two fundamental differences in the factual situation found in those decisions and the facts in the case at bar. First, in all of the cited cases there was no partnership in existence as a going concern after the suit was instituted. Second, in each of the cases all of the part-

ners were joined as parties to the action. Some of the cases are not in point because there had been a formal dissolution of the partnership. Others are not in point because the action was one in equity for an accounting and not in law for damages. In certain other cases (more in point here), the partnership business had been dissolved by the sale by one partner of all of the partnership assets or by a conversion thereof by one partner to his own use or to the use of his coconspirators. In the case at bar, it is undisputed (both parties insist on it, in fact) that the limited partnership doing business as the Boomsnub Company has not been dissolved but continues in existence.

■ After analyzing all of the cases on which respondent relies as precedents for maintaining this suit in its present form, we conclude that, under some circumstances, a partner may maintain an action against his copartner and others for conspiracy: For instance, when one partner converts all of the partnership assets by selling the partnership business to others, or forcibly excludes his partner from the business and converts the partnership assets to his own use or to the use of his coconspirators, the innocent partner may maintain an action at law for such damages as he may be able to prove were suffered by him as an individual.

We must hold, however, that a partner cannot sue his copartner and others for conspiracy to convert the partnership assets when the partnership remains in existence and retains valuable assets in which the suing partner concededly has an interest, *unless the wronged partner chooses to treat the acts of his copartner and the other conspirators as a conversion of the partnership assets and a dissolution of the partnership.*

The theory on which such suits are allowed to be brought before formal dissolution of the partnership is well illustrated by *Moropoulos v. C. H. & O. B. Fuller Co.,* 186 Cal. 679, 200 Pac. 601, in which plaintiff partner was ousted from possession of the partnership dairy farm (operated on leased land) as a result of a conspiracy between his copartner and others. The court held that plaintiff "might have brought

his action after the ouster for restoration to the possession of the leasehold and the dairy business." The court added, however:

"But plaintiff also had the right to *submit to this wrongful appropriation and conversion of the partnership business and assets by the defendants and his partner Karales, and to bring his action for the damages personally suffered.*" (Italics ours.)

In those cases cited by respondent which are applicable to the present case, recovery was permitted on the same theory, to wit, the legal theory that the partnership assets had been converted. Consequently, by bringing such an action the innocent partner in effect elects to confirm title to the converted property in the erring partner and his coconspirators, and he must surrender his claim to the converted partnership property when he collects his judgment. Furthermore, his title or interest in the converted property passes to the wrongdoers as of the date of the conversion, and hence the innocent partner suing for damages has no interest in profits earned by use of the partnership property after the conversion. *Diamond Ice & Storage Co. v. Klock Produce Co.*, 110 Wash. 683, 189 Pac. 257.

In the case at bar, however, respondent has not elected to treat the act of his partner Sathre in entering into the royalty agreement with appellants Steele and Hauge as a conversion of the partnership assets and as a dissolution of the partnership. On the contrary, respondent maintained in the trial court and maintains here that his cause of action is only for the damages suffered by him from the time the royalty agreement was signed (September 19, 1952) until the date of trial (May 25, 1953). Furthermore, the trial court adopted respondent's theory of damages and instructed the jury on that basis. Respondent still asserts that he has a right to sue appellants again for subsequent damages if appellants Steele and Hauge continue to manufacture and sell boomsnubs. In fact, the record indicates that another action has been brought by respondent for damages claimed to have accrued subsequent to the trial of this case.

Respondent's complaint stated a cause of action for conversion of his interest in the partnership assets and was broad enough to allow him to recover damages for the loss of profits he would suffer during the entire term of the life of the patent. But, during the trial, respondent completely changed his position and claimed that he was entitled to recover as damages the total amount which the partnership would have been able to recover if appellants Steele and Hauge were patent infringers.

To allow a partner in the position of respondent to recover continuing damages for loss of the boomsnub patent and still to retain his claim of title to the converted partnership assets (principally the patent), would be equivalent to allowing him a double recovery for one wrong. In lay vernacular, such a procedure would allow the injured partner to "eat his cake and have it too."

Since we hold that a partner in respondent's position must elect either to treat the acts of his copartner and the coconspirators as a conversion of the partnership assets and a dissolution of the partnership or to treat the partnership as still in existence and seek a cancellation of the agreement of September 19, 1952, the next question is: Should respondent's act of bringing this action be treated as an election to surrender title to the partnership property and to dissolve the partnership?

Under the peculiar facts of the case at bar, we must answer the foregoing question in the negative for two reasons: First, the respondent has contended strenuously at every stage of the case that he was not electing to surrender his claim to the boomsnub patent and to dissolve the partnership. Second, the record shows that a number of limited partners have invested a total of $14,000 in the Boomsnub Company, and therefore respondent's act *alone* cannot be held to effectuate a dissolution of the partnership and a consequent surrendering by the partnership of all of its title to the boomsnub patent, unless all partners are parties to the suit.

In the recent case of *Peck v. Better Business Standards Ass'n*, 44 Wn. (2d) 804, 271 P. (2d) 697, we said:

"This court has held that one partner cannot maintain an action for the benefit of a partnership (either existing or dissolved) with respect to a partnership asset without showing an assignment thereof from the other partner or partners to himself unless all partners are joined as parties to the action. *Seltzer v. Chadwick*, 26 Wn. (2d) 297, 173 P. (2d) 991, and cases cited therein."

Here, respondent is not seeking to maintain the action for the benefit of the partnership. He sues wholly for himself. The several limited partners are not parties to the action, nor is any assignment of their rights to respondent alleged or proven. The corollary to the foregoing rule must be that one partner cannot maintain an action for the benefit of himself with respect to a conspiracy to convert a partnership asset without showing an assignment of the rights of the other partners to himself unless all partners are joined as parties to the action. Only thus can the rights of all of the parties to a partnership be protected. Any damages which respondent has suffered here as a member of the partnership have been likewise suffered by all of the limited partners, proportionately.

By an appropriate assignment of error, appellants have challenged respondent's right to maintain this action for the benefit of the partnership while the partnership exists undissolved. We must sustain that challenge. That does not mean, however, that respondent cannot maintain the action under any circumstances. After this case is remanded for a new trial, the respondent may then elect to treat appellants' acts as a conversion of the partnership property and a dissolution of the partnership as to him (respondent). If the respondent does so elect, he may maintain this action if he either shows a proper assignment from all other partners to himself or they are joined as parties to the action.

From what we have already said, it follows that the trial court erred in its instructions concerning the measure of damages. In the event respondent elects to amend

to sue for conversion, the proper measure of damages would be *respondent's proportionate share* of the market value of the converted partnership property at the time of the conversion. *Anstine v. McWilliams,* 24 Wn. (2d) 230, 163 P. (2d) 816; *Junkin v. Anderson,* 12 Wn. (2d) 58, 120 P. (2d) 548, 123 P. (2d) 759.

After the remittitur is filed in the trial court, respondent may elect to amend his complaint so as to state a cause of action on either of the following theories:

1. He may sue for his proportionate share of the value of the converted partnership property.

2. He may sue to set aside the agreement of September 19, 1952, on the ground that appellant Sathre had no authority to execute the agreement.

In order to maintain the action on either theory, respondent must allege and prove an assignment to himself of the interest of the limited partners or join them as parties to the action.

Because the trial court erred in denying appellants' motion for a new trial for the reasons heretofore mentioned, the judgment must be, and is, reversed and the cause remanded for a new trial to be conducted consistently with the views expressed herein.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.