[No. 16995.  Department One.  May 15, 1922.]

FRANK YARNALL, *Respondent*, v. KNICKERBOCKER
COMPANY, *Appellant*.[1]

APPEAL (416)—REVIEW—FINDINGS.  Findings on conflicting evidence will not be disturbed where it cannot be said that the evidence preponderates against them.

VENDOR AND PURCHASER (62)—RESCISSION BY PURCHASER—FAILURE OF CONSIDERATION.  The size of the lot purchased for a residence was a material consideration, authorizing a rescission by the purchaser, where it was represented as 60 by 60 feet, and was in fact only 41 by 48, and too small for comfortable enjoyment for residence purposes.

BROKERS (37)—FRAUD OF BROKER—LIABILITY TO THIRD PERSONS.  An answer admitting that the sale was negotiated by a broker as alleged in the complaint, which charges that the vendor was represented by a broker, shows an authority broader than employment to merely find a purchaser, so that the purchaser could rescind for false representations of the broker as to the boundaries of the lot.

VENDOR AND PURCHASER (22)—CONTRACT—FRAUD—RELIANCE ON REPRESENTATIONS.  Where the description of lots gave no intimation as to the area or dimensions, the purchaser may rely on representations as to the dimensions which were liable to mislead.

SAME (75)—RESCISSION BY VENDEE—OPERATION AND EFFECT—RENTS PRIOR TO RESCISSION.  A judgment of rescission refusing to allow the value of the use of the premises and also refusing to allow interest on the sums paid during the period, will not be held inequitable, in the absence of evidence showing the value of the use except in a general way.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 20, 1921, upon findings in favor of the plaintiff, in an action for rescission, tried to the court.  Affirmed.

*C. A. Riddle*, for appellant.

*Kelleran & Hannan*, for respondent.

[1]Reported in 206 Pac. 936.

FULLERTON, J.—September 27, 1919, the respondent, Yarnall, and the appellant, Knickerbocker Company, entered into a written contract whereby the appellant agreed to sell, and the respondent agreed to purchase, a tract of land described as follows:

"North half (N½) of Lot Eighteen, (18) and the North half (N½) of the West one-half of Lot Nineteen (19) Block C, Hartings Addition to the city of Seattle, King county, state of Washington, as per recorded plat thereof in the office of the auditor of said King county, Washington."

The agreed purchase price of the land was twenty-one hundred dollars. Of this sum two hundred dollars was paid on the execution of the contract, and the balance agreed to be paid in installments of twenty-five dollars on the first day of each and every month thereafter, beginning with the month of November following, until the full purchase price was paid; the deferred payments to bear interest at the rate of seven per cent per annum, and to be paid monthly. There was upon the premises at the time of the purchase a new bungalow, and the purchasers were let into possession at once.

In the negotiations leading up to the contract of sale, the appellants were represented by a real estate firm; members of which took the respondent and his housekeeper to the property and showed them over it prior to the execution of the contract. While there is a dispute in the evidence as to the fact, the respondent and his housekeeper testified that, prior to the execution of the contract, when they were on the property with members of the real estate firm who were showing them the property, they inquired as to its dimensions, saying that they wished sufficient ground upon which to raise a small garden and keep a few chickens, and that the agents told them that the size of the property was

sixty by sixty feet, and that, when the housekeeper said she did not know "how big that was," a fence was pointed out back of the property, running parallel with the street in front of the property and about seventy feet therefrom, which they were told was near the back line of the premises.

After entering into the possession of the property, the respondent made the monthly payments as they became due according to the terms of the contract up to November, 1920. At that time it was discovered that the tract contained in the description was not sixty by sixty feet in size, but was only forty and one-half by forty-eight feet, the longer line paralleling the street, and the back line of tract running within six or seven feet of the back side of the bungalow. On the discovery of the fact, the respondent immediately sought a rescission of the contract. The parties, however, were unable to agree, and the respondent thereupon brought the present action to compel rescission, and to recover the sums paid upon the contract. The cause was tried by the court as an action of equitable cognizance; the court finding that the representations as to the size of the lots were material representations, that the respondent was deceived thereby and induced to contract for the purchase of the premises because thereof; entering a decree of rescission in which it allowed a recovery for the amount paid upon the contract of purchase, together with the taxes and insurance premiums paid while the respondent was in possession, less the value of the use of the premises between the time the notice of rescission was given and the date of the decree, which was found to be the sum of one hundred and twenty-six dollars. No allowance of interest was made to the respondent on the sums paid by him pursuant to the terms of the contract

There was, as we have indicated, a conflict in the evidence on the question whether the agents made representations as to the size of the tract. The evidence, however, it would be unprofitable to review. It was affirmed by the respondent and his housekeeper on the one side, and denied by the agents, two in number, on the other. The trial court was in better position to judge of the testimony than are we, and we cannot say that it preponderates against his conclusion. So, also, with respect to the further contention that the size of the tract was not the material consideration which induced the respondent to enter into the contract. We think the evidence is clear that it was one of the material considerations. The tract was in a comparatively thinly settled portion of the city of Seattle, and the respondent desired it for a home, where he could have a garden and keep chickens. The actual position of the back line of the premises precluded any possibility of this. It was even too close to the bungalow to permit of its comfortable enjoyment had it been desired for residence purposes alone. The evidence is clear that had the respondent known, or had it been pointed out to him that the tract was of the dimensions it actually was, he would not have entered in the contract of purchase.

The next contention is that the brokers were employed for the purpose of procuring a purchaser for the property only, and were without authority to make representations as to its area or boundary lines. The authority of the agents seems not to have been a subject of inquiry in the evidence. In the complaint, however, it is alleged that "in and about the sale of the property the appellant was represented by a broker," and the answer in response thereto "admits that the sale of said premises was negotiated by a real estate broker, all as alleged in said complaint." The author-

ity of the brokers was, therefore, somewhat broader than the authority usually conferred on a real estate broker who is employed merely to procure a purchaser; and under the authority of *O'Daniel v. Streeby,* 77 Wash. 414, 137 Pac. 1025, L. R. A. 1915F 634, we are clear that they had authority to make representations binding upon that principal, as to the dimension and boundary lines of the premises. In the cited case the brokers were employed to conduct negotiations for the sale of real property, and we held that the agent's representations to the effect that certain apparent fixtures pointed out to the purchaser by the agent as part of the realty were made with authority and obligatory upon the principal. The same principle would authorize them to represent its area and point out the boundary lines. In that case, also, the court noticed the case of *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180, on which the appellant here relies, and pointed out the distinction between that case and the case then before it. The same distinction exists between that case and the one now before us, and we need not repeat the reasoning by which the distinction is shown.

But the case of *Samson v. Beale, supra,* is not authority for the principle that a real estate broker, employed for the sole purpose of procuring a purchaser for real property, may not make representations as to the area and boundary lines of the property, binding upon his principal, when the area and boundary lines are not apparent from an inspection of the property. In that case the agent made representations as to the manner in which a building upon the premises was constructed, which proved to be a mistake, and these, it was held, were not binding upon the principal. This is a far different matter than merely pointing out the premises, and could well be said to be beyond the agent's authority without special authorization. But

the rule is general that a power given an agent to perform a particular service carries with it the authority to do whatever is usual and necessary to carry into effect the principal power. An agent or broker employed to procure a purchaser for real property could hardly make a beginning in his negotiations unless he was empowered either to exhibit the property or make representations concerning it of some sort. Where the property is at hand it is usual and customary to exhibit it to the intending purchaser, and to exhibit it means that he point out its boundaries. So, if the present case must rest on the principle that the agent had authority only to procure a purchaser, the principal would be bound by the representation as to the area and boundaries of the land.

A further contention is that it was the duty of the purchaser to verify the representations made by the agents, and failing in this, they cannot legally complain that they were deceived by the representations. Undoubtedly public policy requires that a person exercise ordinary diligence and prudence with respect to their business affairs, and this court has many times held that it will not relieve a complainant whose situation has been brought about by neglect of this requirement. In consonance with the rule, we have held with reference to false representations concerning real property that a purchaser will not be relieved of his contract to purchase because of false representations if the facts were at hand and readily open to his observation or inspection and he neglected to take advantage of his opportunity. But the converse of the proposition is also the rule, and we think the facts here fall within the latter rule rather than within the first. The description of the property as contained in the contract, it will be noticed, gave no intimation as to the area of the property. The description was by fractional lots

without giving the dimensions of the lots. The respondent could, of course, have ascertained the area by taking the description and comparing it with the recorded plat, but the method of ascertainment was not directly before him and was not, we think, so readily ascertainable as to charge him with neglect for failing to go to the trouble of verification. The representations were of a character, and were made under circumstances, readily to mislead, and they were representations upon which he had a right to rely. The principle of public policy, before noticed, will not allow the courts to permit a purchaser of real property to throw all precaution to the winds, yet where one person relies to his prejudice on the false representations of another, the argument of that other that he ought not to have done so never appeals strongly to the conscience of the court.

Finally, it is urged that the court failed to do equity between the parties. This contention has its foundation in the fact that the court did not find the value of the use of the premises between the date of the contract and the date of the notice of rescission. The court did, however, refuse to allow the respondent interest on the sums paid during this period, and, in the absence of evidence showing more than in a general way the value of the use of the premises, we cannot say that justice in this respect was not done.

The judgment is affirmed.

PARKER, C. J., MITCHELL, HOVEY, and TOLMAN, JJ., concur.