[No. 32517.   Department Two.   February 4, 1954.]

GEORGE A. FREEMAN, *Appellant*, v. STEMM BROS., INC., *Respondent.*[1]

*John Hancock*, for appellant.

*J. Harold Anderson*, for respondent.

[1]Reported in 265 P. (2d) 1055.

FINLEY, J.—This is an action for rescission of a sale of an orchard-tending machine, purchased by George A. Freeman, an apple orchardist, of Tonasket, Washington, from Stemm Bros., Inc., a corporation, of Leavenworth, Washington. For many years, Stemm Bros., Inc., had manufactured a power-operated machine, generally known in the trade as a commercial hydraulic hi-tender. This was described in the corporation's brief as follows:

"The Hi-Tender in this case consists of an assembly of members similar to the human arm, a double boom with elbows. To carry out the illustration the base (human shoulder) is installed on a turntable, and the outer end (human hand) carries a cage in which the workman rides with his tools and materials. The controls are in the cage so the workman can determine his own movements. . . . The turntable is actuated by a gear box in the base of the machine. The machine is operated by hydraulics. Pressure is developed by a hydraulic pump powered by a gasoline engine, and the hydraulic fluid (oil), under pressure, in turn actuates a hydromotor and hydraulic cylinders. . . ."

Upon learning that Stemm Bros., Inc., was contemplating the manufacture of a variation of the commercial hi-tender for use in pruning, thinning, and picking apples, Mr. Freeman ordered one of the machines. Within three or four days after the orchard hi-tender was delivered to Mr. Freeman, the sprocket chains (holding the hoist) broke. The machine was returned to the manufacturing plant of Stemm Bros., Inc. After replacing the broken chains and strengthening the base of the machine, the corporation redelivered it to Mr. Freeman in September of the same year. Thereafter, Freeman used the machine for some sixty hours for picking apples in his orchard, but claims that it did not work satisfactorily at any time, despite his best efforts to operate, maintain, and adjust it.

According to Mr. Freeman, he was unable to use the orchard hi-tender after the hydraulic arm froze in an upright position and could not be moved. He claims that Stemm Bros., Inc., was notified of the situation and was requested to repair the machine. Stemm Bros., Inc., at this

time made no attempt to put the hi-tender into workable operation, and on December 15, 1952, Freeman gave written notice to Stemm Bros., Inc., that he was rescinding the sale. He offered to return the machine, and demanded refund of the $4,080.01 which he said he had paid for the machine. Shortly thereafter, Mr. Freeman brought this suit, alleging breach of both an express warranty and an implied warranty of fitness. We note that Mr. Zweight, manager of Stemm Bros., Inc., testified that he called at Mr. Freeman's place a few days after this lawsuit was commenced, and after making a few adjustments, was able to put the machine in operation.

The trial court concluded that there was no *breach* of either an express or implied warranty, and entered judgment for the defendant. Freeman has appealed.

No error has been assigned to the trial court's failure to make any finding in regard to an express warranty. From the findings of fact and the conclusions of law which were entered, it is not clear whether the trial court found that an implied warranty of fitness existed. It is not necessary for us to consider this question, because we are convinced that, assuming such an implied warranty did exist, the evidence does not preponderate against the trial court's findings on the matter of breach: that is, that there was no breach of a warranty.

In its assignments of error, appellant has challenged all of the trial court's findings of fact, that there were no defects in the machine. At the trial, appellant offered proof that the hi-tender was unworkable in at least seven important respects. Any of these alleged defects, if established, would tend to show a breach of warranty of fitness. The defects claimed by appellant include the following: (1) The sprocket chains holding up the arms and cage on the hi-tender broke; (2) the counterweights and balances, placed on the machine to keep it from tipping, broke off; (3) the turntable on the hi-tender did not operate fast enough to perform orchard work; (4) the hi-tender did not have sufficient power to rotate the turntable, making it necessary for the operator to descend from the cage and push the turn-

table manually; (5) the hi-tender was so constructed mechanically that the cage (from which the operator worked) drifted continually into the branches of the trees, thus preventing the operator from picking the fruit; (6) the hi-tender continually leaked excessive amounts of hydraulic fluid; (7) the lubricating system on the machine was defective in that the *zerk* plugs would work out, under pressure from the lubricating gun.

As mentioned herein before, the sprocket chains broke shortly after the initial delivery of the machine to appellant. This was in May, 1952. Thereafter, the respondent took the machine back to its shop and replaced the chains with stronger ones. In September, 1952, the appellant accepted the repaired machine. In view of the satisfactory operation of the sprocket chains subsequent to the redelivery, the trial court correctly found that there was no breach of warranty in this respect.

Appellant's evidence showed that the counterweights, placed on the hi-tender to keep it from tipping, broke. There was testimony that, as a result, appellant was unable to demonstrate the machine at a county fair. However, the machine was used for sixty hours in orchard work after the weights had broken. It was not claimed that this defect prevented use of the machine, and there was no evidence to show that this defect rendered the hi-tender unfit for orchard work. Where a buyer sues for breach of an implied warranty of fitness, it is not enough that he show some defect in the goods purchased. It is essential that he prove that, as a result of the defect, the goods are not fit for his purpose. The trial court did not err in refusing to find a breach of warranty because of the broken counterweights.

Appellant testified that the turntable which rotated the hi-tender turned too slowly. Mr. Zweight testified that, in his opinion, the rotation was not too slow; but that, at appellant's request, he had installed a bigger gear to increase the speed; that thereafter, the machine lacked sufficient power to rotate the turntable when it was on a grade, making it necessary for the operator to leave the cage and push the turntable by hand in order to get it to the desired

position. The court found that, "at the request and direction of the plaintiff, and because he desired that the turntable operate at a higher speed, the defendant installed a high speed gear for operating said turntable at a higher speed, although the same required more power than the original gear for such purpose." The trial court apparently felt that the lack of power for operating the turntable was due to the installation of the larger gear, and that there was no reliance upon respondent's skill and judgment in making this installation, since it was made at the request of appellant. We do not think there was error in this finding.

Three of the most serious difficulties which appellant had with the hi-tender resulted from: (1) the drifting of the cage into the branches of the trees, preventing the operator from working at the desired height; (2) the excessive leakage of hydraulic fluid; and (3) the difficulty with the lubricating system. There is no dispute that these troubles rendered the machine unusable for orchard work, so far as appellant was concerned. It is the *cause* of these difficulties which is very much in dispute. Appellant contends the machine is inherently defective; respondent's theory is that, with proper maintenance, adjustment, and servicing, the machine would operate satisfactorily. In its finding of fact No. IV, the trial court said:

"That knowledge of hydraulics is necessary for the proper adjustment, maintenance, and use of said Hi-Tender; that the actual defects in said machine were repaired and made good by the defendant, after which defendant delivered said machine back to the plaintiff and the plaintiff received the same, on or about the 9th day of September, 1952; that the other difficulties of the plaintiff in the operation of said machine and the use thereof were caused only by lack of proper maintenance and adjustment of the same necessary to such use and operation; and that there was no breach by defendant of any express or implied warranty as to the said machine."

■■ The so-called finding in the latter portion of the above quotation to the effect that there was no breach of warranty is a conclusion of law, and can stand only if sup-

ported by the other findings of the trial court. In reviewing these findings, we note that there was considerable evidence from which the trial court might have concluded that the fault was due to defects inherent in the machine, rather than to lack of proper maintenance and adjustment. However, it is not our function to weigh the evidence as a trier of fact. The evidence was in conflict. In the instances where there was no conflict, the testimony was susceptible of different interpretations as to whether the fault lay in the machine or in faulty maintenance and adjustment. Where the evidence is in conflict, and we cannot say that it preponderates against the findings of the trial court, we will accept the findings as the established facts of the case. *Allen v. Saccomanno*, 40 Wn. (2d) 283, 242 P. (2d) 747.

The trial court's conclusion of law, that there was no breach of an express or implied warranty, is supported by the findings and the evidence.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.