READY SAND AND GRAVEL COMPANY, A NEBRASKA CORPORATION, NOW KNOWN AS ALL-MIX CONCRETE AND GRAVEL CO., A NEBRASKA CORPORATION, APPELLANT, V. L. S. CORNETT, APPELLEE.

171 N. W. 2d 775

Filed November 7, 1969. No. 37229.

Keith I. Frederick and Schmid, Ford, Snow, Green & Mooney, for appellant.

Alfred A. Fiedler, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is a suit in equity to reform a real estate sales agreement and to reduce the price to the number of acres represented as being sold. Claim is also made for attorneys' fees and expenses incurred in unsuccessful litigation with a third party claiming by adverse possession a part of the land conveyed. The trial court found for the defendant and plaintiff has appealed.

On March 31, 1960, Arthur H. Schultz and wife en-

tered into an agreement with Kenneth J. Weiman, Verna L. Cornett, and John R. Atkins in which the Schultzes agreed to sell to Weiman, Cornett, and Atkins the following described real estate: "The North One half (N½) of the Southeast One Fourth (SE¼) of Section Eighteen (18), and Government Lot 3 in Section 18, all in Township 15 North, Range 10 East of the 6th P.M. And the accreation (sic) thereto," for the sum of $37,000. Subsequently L. S. Cornett acquired the interest of the purchasers, Cornett thereby becoming the sole owner of the interest in the real estate by virtue of the sale contract. The record further discloses that Cornett was the sole owner of all the stock amounting to 500 shares of Ready Sand and Gravel Company, now All-Mix Concrete and Gravel Company, which Cornett sold to William C. Patterson and Gus Graske by an agreement executed on December 31, 1965. The stock transaction appears to be of little importance here although the agreement recites that it is an integral part of the land transaction. On December 23, 1965, Cornett assigned to Ready Sand and Gravel Company all his right, title, and interest in and to the land contract of March 31, 1960, and the real estate described therein which was described the same as in the contract of sale of March 31, 1960. The closing date for completing the sale from Cornett to Patterson and Graske was December 31, 1965. Cornett refused to extend the date for closing the sale. On December 22, 1965, Patterson and Graske, with their counsel, met in the law office of defendant's counsel, with defendant and his counsel present, and the latter prepared a sales agreement covering the sale of stock and indemnities, protecting against existing liabilities of the corporation, and covering the terms of the land contract as well. Patterson insisted that it be made clear as to the number of acres they were getting. Graske also insisted that the number of acres being sold be specified. One of plaintiff's counsel, Dwyer, testified that the words, "Containing 125 acres plus accretion ground," were added

by mutual agreement to the tentative contract for the very purpose of fixing the acreage sold to mean that there were 125 acres plus the accretion ground. Another attorney representing the plaintiff corroborated this testimony. On the other hand, Cornett testified that he intended to sell only his interest in the Schultz-Cornett sale contract and, knowing that there was in excess of 125 acres with the accretion lands included, he agreed to the amendment of the sale contract by inserting, "Containing 125 acres plus accretion ground." Defendant's attorney did not testify. It appears clear to us that the sales agreement after the amendment was added meant that Cornett contracted to sell 125 acres and any and all accretions thereto. While the evidence was in conflict as to the intention of the parties in making the amendment, the intention of the parties as manifested by the amended contract was clear and unequivocal that defendant agreed to sell and Patterson and Graske agreed to purchase 125 acres of land and, in addition thereto, all accretion ground. The change thus made was carried into the final closing agreement of December 31, 1965.

Subsequent to the execution of the sales agreement Graske caused a survey of the land to be made. The survey showed that the north half of the southeast quarter and government Lot 3, all in Section 18, contained 119.15 acres. In a subsequent and separate suit, it was decreed that one Fred L. Lydick, by adverse possession, was the owner of 5.92 acres lying along the south side of the north half of the southeast quarter and government Lot 3.

In the sales agreement for the sale of stock, dated December 31, 1965, it was provided in part as follows: "The Seller hereby guarantees payment of and will save the Buyers, * * * free and harmless of and from all demands, claims, actions or causes of action, assessments, losses, damages and attorneys fees by reason of any claims obligations, debts, demands or liabilities existing as against the Corporation or the real estate de-

scribed in paragraph 6 above, except the interests described therein, prior to and including the date of this agreement, or thereafter coming into being by reason of any state of facts existing prior to and including the date of this agreement or arising or growing out of this transaction, * * *." Plaintiff asserts that Ready Sand and Gravel Company brought a suit to quiet the title to the 5.92 acres south of the south fence line against Lydick with an unsuccessful result. It is contended that attorneys' fees of $750 and surveying fees of $584, in addition to costs amounting to $46, are within the contract of guaranty. Cornett contends that these items are not within the guaranty for the reason that the suit was brought by Ready Sand and Gravel Company and was not within the guaranty for the reason that it was affirmative and not defensive. This defense was highly technical. The quiet title action was necessary to determine the right of ownership and use, and is within the intent of the guaranty.

On May 2, 1966, and before the quiet title action was determined, Graske caused the survey of the lands involved to be made, as above stated. The survey showed that the north half of the southeast quarter and government Lot 3, according to the surveyor's legal descriptions, contained 119.15 acres. The area lost by adverse possession south of the south fence line was 5.92 acres, leaving 113.23 acres exclusive of accretion lands. The accretion lands lying between the dike on the west line of Lot 3 and the Platte River amounted to 19.78 acres. The total number of acres including the accretion lands and excluding the 5.92 acres lost by adverse possession is 133.01 acres. It is clear from the undisputed facts that the issues of this case must be determined from the contract of the parties as gleaned from the numerous documents offered in evidence in the case.

The evidence shows that the Schultz-Cornett sale contract made no mention of the number of acres. Nor did the assignment of this contract by Cornett to Ready

Sand and Gravel Company specify the number of acres being assigned. On December 22, 1965, a contract prepared by Cornett's attorney, covering the sale of stock and the real estate, contained the legal description of the real estate as follows: "No. ½ of the S.E. ¼ of Section 18 and the Governments (sic) Lot 3 in Section 18, all in Township 15 N., Range 10 East of the 6th P.M. and the accreation (sic) thereto, Douglas County, Nebraska." After the question of the number of acres being conveyed was raised and discussed, as hereinbefore related, the parties by agreement added the following to the legal description: "Containing 125 acres plus accreation (sic) ground." In a document designated "AGREEMENT FOR SALE OF STOCK," bearing date of December 31, 1965, the real estate was described as follows: "The North ½ of the Southeast ¼ of Section 18 and the Government Lot 3 in Section 18, all in Township 15 North, Range 10 East of the 6th P.M. and the accretion thereto in Douglas County, Nebraska, containing at least 125 acres, plus accretion ground." The last-mentioned contract is the final closing contract and expresses the meeting of the minds of the parties in completing the stock and land transaction.

It seems clear to us that the foregoing description means that Cornett contracted to sell the north half of the southeast quarter and government Lot 3, plus the accretion ground. Cornett's testimony that the words, "plus the accretion ground," were intended to convey future accretions is rather specious in view of Cornett's long experience as a real estate dealer and the fact that future accretions attach as a matter of law. We conclude that the amended descriptions were a representation that the north half of the southeast quarter and government Lot 3 contained 125 acres.

Defendant asserts as a defense that where a mistake of the parties in conveying real estate relates to the identity of the property itself, reformation cannot be had. As a general proposition of law this is true. See

45 Am. Jur., Reformation of Instruments, § 38, p. 604. The rule is stated in Lippire v. Eckel, 178 Neb. 643, 134 N. W. 2d 802, as follows: "Where a mistake of the parties relates to the identity of the property itself, reformation may not be had. However, where there is no mistake as to the identity of the land intended to be conveyed, but there is a mistake in the description of it, equity may reform the instrument to conform to the true intention of the parties."

There is no mistake asserted here as to the legal description of the land intended to be conveyed. The mistake, if there be one, is as to the meaning of the representation of the number of acres warranted or represented to be within the legal description of the north half of the southeast quarter and government Lot 3, all in Section 18. It appears that $17,000 of the purchase price had not been paid to the Schultzes after the payment of which amount a warranty deed was to be furnished by the Schultzes. The sale contract provided that Ready Sand and Gravel Company would assume the $17,000 and receive the warranty deed from the Schultzes upon its payment. It was also agreed that Cornett would deliver a quitclaim deed to the real estate to the purchasers. The giving of the quitclaim deed by Cornett under these circumstances and the acceptance of a quitclaim deed by the purchasers from Cornett does not play any part in the determination of the liability for contractual representations and warranties of Cornett, or his liability under the indemnifying provisions of the closing contract of sale. It is our conclusion that the trial court was in error in denying relief to the plaintiff and dismissing its action.

Under the findings as herein made, we have determined that the description of the lands sold after the amendment mutually agreed upon is plain and clear that Cornett agreed to convey the north half of the southeast quarter and government Lot 3 containing at least 125 acres plus the accretion ground. There is no evi-

dence in this record of a mutual mistake. This precise issue does not appear to have been directly raised and certainly it was not assigned as error. Mistake as a ground for reformation of an instrument must be mutual, otherwise a reformation of the instrument reformed would be the equivalent of making a new contract for the parties which the courts may not do. The petition filed in the instant case resembles a suit for specific performance by the purchasers with abatement of the purchase price. "In actions by a vendee for the specific performance of a contract for the sale of real estate, where it appears that the vendor is unable to make a complete or perfect title, or that there is a deficiency in the quantity of land contracted to be sold, the general rule is that the vendee, if he so elects, it not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full. The vendee, in other words, may waive full performance and accept such title as the vendor is able to give, and if he chooses to do so, he has a right to that and to an abatement, and the court will not hear the objection, by the vendor, that the purchaser cannot have the whole. * * * The measure of abatement should be such portion of the purchase price as the relative value of the land lost bears to the purchase price of the whole tract. At any event, abatement should be made upon the basis of the contract price." 49 Am. Jur., Specific Performance, § 105, p. 123. See, also, Melin v. Woolley, 103 Minn. 498, 115 N. W. 654, 22 L. R. A. N. S. 595; McFarlane v. Dixon, 176 Wis. 652, 187 N. W. 671, 48 A. L. R. 1. Whether or not an action for the reformation of the contract for the sale of real estate is established by the

evidence, the petition states a cause of action for equitable relief. Pursuant to the principle that a court of equity once having properly acquired jurisdiction in a suit for equitable relief will make a complete adjudication of all matters properly presented and involved in the case, the court ordinarily will grant such relief, legal or equitable, as justice and equity may require.

There is no evidence in this record as to the per acre value of the lands sold. It cannot be assumed in view of the evidence that the accretion lands west of the dike are of the same value as the lands east thereof. We can find no way to assess damages or abate the deficiency against any unpaid part of the purchase price. It is the opinion of this court that the costs and attorneys' fees incurred in the case of Ready Sand and Gravel Company v. Cornett, Schultz, and Lydick, docket 589, No. 137, of the records of the district court for Douglas County, are subject to the indemnity provisions of the contract bearing date of December 31, 1965, if the procedural provisions of that contract have been complied with, a matter that we do not here decide.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.