THEODORE SCHWEITZ, DOING BUSINESS AS SCHWEITZ
EQUIPMENT COMPANY, FULLERTON, NEBRASKA, APPELLANT,
v. STATE FARM FIRE AND CASUALTY COMPANY, APPELLEE.

208 N. W. 2d 664

Filed June 22, 1973. No. 38923.

Philip T. Morgan, for appellant.

Luebs, Tracy, Huebner, Dowding & Beltzer and D.
Steven Leininger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH,
McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an action to reform a contract of liability
insurance. The District Court denied reformation. We
affirm.

On June 11, 1968, the defendant issued to the plaintiff a policy of insurance which included a form providing liability coverage. The insuring clause thereof was as follows: "The Company will pay on behalf of the insured all sums which the insured shall¯become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements." The policy contained the following exclusions: "(1) to property damage to the named insured's products arising out of such products or any part of such products; (m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

The plaintiff was engaged in the business of selling and installing dairy equipment including constructing dairy barns. This latter work he performed by subcontracting the work to others.

The plaintiff, after issuance of the policy, caused to be constructed for one of his customers a dairy barn of concrete block walls and a wooden roof. Following completion of the building and delivery of possession to the customer, but before the customer had fully paid the contract price, a storm occurred and in the plain-

tiff's language the "roof blew away. It took off like a kite off of the block building."

The plaintiff brought an action against his customer to recover the balance of the contract price. The customer cross-claimed for the cost of repairing and replacing the roof. The cross-petition alleged in what purport to be three separate causes of action alternate grounds of recovery including construction in an "unskilled manner," "implied warranty," and "negligent and improper construction."

After the cross-petition was filed the plaintiff requested the defendant to defend the cross-petition and to pay the judgment against him if one was obtained. It refused. He brought this action. It is clear the policy as written afforded no coverage to the plaintiff under these circumstances. See Hartford Acc. & Ind. Co. v. Olson Bros., Inc., 187 Neb. 179, 188 N. W. 2d 699.

The evidence discloses that previous to the issuance of the policy the plaintiff, because his business was expanding, became concerned about his insurance coverage. He conferred with an agent and other representatives of the defendant with whom he was already insured. In this conference there was fully discussed the nature of the plaintiff's business and its operations. The plaintiff's testimony on direct examination was as follows: "Q. What was said to you about the type of coverage you would have? A. It's been so long ago, but I think that I was assured that I would have complete coverage for the work that I was doing. I can't recall what exact words were said and what each individual said anymore." On cross-examination his testimony included the following: "Q. Your statement is that you wanted general coverage for your business operations, is that right? A. Yes, I wanted complete coverage for my business operations. Q. Did you ever cover any specific situations that you wanted covered with Mr. Rumsey or the people that were with him? A. I can't recall anything, but I do know that during

this conversation that we did discuss all things that we done in regards to our work. Q. Did anyone ever say to you that you would have coverage for defective workmanship claims? A. To my knowledge, no. Q. Did anyone ever say that there would be coverage if wind blew a roof off of an installed building after you installed it? A. No. Q. Now, this particular claim by Mr. Robatham covered a damage claim to one of your products, did it not? A. Yes. Q. And this wind damage was to work that was performed by you or on your behalf, was it not? A. Yes. Q. Did you have any builders risk coverage on this Robatham job? A. No, sir."

The agent testified: "Q. Can you tell the Court what was discussed at this particular meeting? A. Mr. Schweitz came over to my office and met with us. We sat there and visited about his particular operation and he told us what he was concerned about. He wanted his operations covered to protect him for any and all things that he might be liable for. Q. Was there ever any discussion about coverage after Mr. Schweitz's operations or specific jobs were completed? A. No, not after they were completed. The discussion was that we would protect him from the time he started until they were completed, and it was, I am sure all of our thinking, that this was naturally the end of our protection, I guess you would say. Q. Was there ever any discussion about protection for claims which arose to buildings, or damage to buildings, after Mr. Schweitz completed the construction? A. Only up until completion date as far as I recall. This discussion has been several years ago and it is kind of hard to remember all those things, but this is the way I remember it."

Although neither in the pleadings nor in the evidence does the plaintiff set forth the language which he claims should be added to or deleted from the policy to conform to his claim to reformation, it appears that his position is that he wants coverage to protect him from

liability under the usual express or implied provisions in a construction contract as to the quality of work. The plaintiff's difficulty is that the evidence does not support the claim that there was any agreement for such insurance. There is no proof that such coverage is even available, much less that the defendant agreed to furnish it.

The applicable rules are: An action for the relief of reformation of a contract rests on the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake or mistake and fraud, some provision or language was omitted, inserted, or incorrectly worded, and the action is to change the instrument so as to conform it to the contract agreed upon. 66 Am. Jur. 2d, Reformation of Instruments, § 1, p. 526; Heikes v. Farm Bureau Ins. Co., 181 Neb. 827, 151 N. W. 2d 336. In a proceeding to reform a contract on the ground of mutual mistake, the burden of proof is on the party interposing that plea. Paine-Fishburn Granite Co. v. Reynoldson, 115 Neb. 520, 213 N. W. 750. In order to obtain reformation of a written instrument on the ground of mistake, the mistake must be mutual. To grant such relief, equity insists that the reformation must be consistent with a complete mutual understanding of the essential terms of their bargain. Ready Sand & Gravel Co. v. Cornett, 184 Neb. 726, 171 N. W. 2d 775; Beideck v. National Fire Ins. Co., 139 Neb. 171, 296 N. W. 873; Corrigan v. Fireman's Fund Ins. Co., 180 Neb. 13, 141 N. W. 2d 170. In order to warrant the reformation of a written instrument in any material respect, the evidence must be clear, convincing, and satisfactory; and, until overcome by such proof, the terms of the instrument must stand as evidencing the intention of the parties. Ready Sand & Gravel Co. v. Cornett, *supra;* Beideck v. National Fire Ins. Co., *supra.*

AFFIRMED.