[No. 44124. En Banc. April 21, 1977.]

ALEXANDER MYERS & COMPANY, INC., *Respondent*, v. CHARLES A. HOPKE, ET AL, *Appellants.*

*McBee & Lewis, Alfred McBee,* and *W. V. Wells,* for appellants.

*Clinton, Fleck, Glein & Brown* and *Russell R. Pearson,* for respondent.

HOROWITZ, J.—Plaintiff Alexander Myers & Company, Inc., brought suit against defendants Charles A. Hopke and Romilda Y. Hopke, husband and wife, for reformation of a contract for plaintiff's purchase of a tract of land near Anacortes, Washington. Plaintiff claimed defendants misrepresented the acreage, and asked the court to reform the contract to reduce the purchase price and contract payments accordingly. The trial court granted the relief requested. Defendants appealed.

The Court of Appeals, Division One, in *Alexander Myers & Co., v. Hopke,* 14 Wn. App. 354, 541 P.2d 713 (1975), reversed the trial court by a 2-to-1 decision, and ordered the case remanded to permit plaintiff to elect either rescission or damages. The court held that reformation is not a proper remedy when fraud induces formation of a contract. Defendants appeal the decision to this court pursuant to CAROA 50(e). We affirm the judgment of the trial court but upon different grounds as later stated.

The evidence, which requires a somewhat detailed review, shows the following facts. Defendants owned an unimproved and irregularly shaped tract of land near Anacortes, Washington. They did not know the acreage of the tract, nor was there anything on the ground to indicate the exact boundaries.

In early 1969, Norris M. Estvold, a real estate broker, on his own contacted defendant Charles Hopke to ask him if he would be interested in selling the tract in question. Hopke replied yes, if the price was right. As to the acreage of the tract, Hopke told Estvold that he didn't know for sure, but thought it was about 70 acres.

Later, Estvold met in his office with Beryl Barker, an associate broker and sales manager of a real estate agency which had as an account the plaintiff, a Washington corporation. Barker testified that during this meeting Estvold called Hopke on the telephone to discuss a possible sale of the property. As to the price, Barker testified, "It was $2,000 an acre at that point . . ."

Barker then returned to Seattle and discussed the property with Richard Myers, then vice–president of the plaintiff corporation.

Estvold testified that after further negotiations with Barker, he went by himself to see Mr. Hopke. Hopke told him he wanted to net $2,000 an acre from the sale. Since the costs of the sale were estimated at $200 an acre, Estvold testified, this made the price $2,200 an acre.

Estvold later told Barker that $2,200 an acre would be a likely acceptable price to defendants. Barker, Estvold testified, replied that "he felt that his buyer would go the $2200 or the $154,000 [70 x $2200], or whatever."

A first earnest money agreement dated February 14, 1969, was then prepared either by Barker or plaintiff. It included, immediately following the legal description, the sentence: "Total parcel contains 70 acres more or less." The sentence was included, Barker testified, "because that property at that point was understood to be 70 acres by me." Barker testified he had no independent knowledge of the acreage and had been told it was 70 acres by Estvold and in conversation with Mr. Hopke. The price of the property was fixed in the agreement at $154,000. There was no per–acre price mentioned. However, the agreement did provide: "Purchase price to be adjusted at the rate of $2,200 per acre in event survey reveals more or less than 70 acres."

The first earnest money agreement was signed by Richard Myers. Defendants refused to sign it because they wanted a higher interest rate on the unpaid balance of the purchase price. After agreement was reached on the interest rate, a second earnest money agreement, dated March 3, 1969, was drawn up by Estvold. It was identical to the first except for the interest rate and new provisions giving the seller 30 days to remove certain timber from the property and reserving a right–of–way for a third party. Estvold first took the second earnest money agreement to defendants. Mr. Hopke testified that he objected to the price adjustment clause, and told Estvold he wanted a firm price on the

real estate because the tract might be more or less than 70 acres. He testified that he told Estvold "I had no idea what was in there." Defendants then deleted with red ink the price adjustment clause. Defendants initialed the change and signed the agreement on March 7, 1969. The sentence stating the parcel contains 70 acres more or less was not deleted.

Mr. Hopke's statement to Estvold that there may have been less than 70 acres in the tract was apparently never communicated either to Barker or Richard Myers. Barker testified this question never came up in his conversations with Estvold, and that their understanding had always been that the tract was 70 acres. Richard Myers also testified he was aware of the deletion, but that he "understood there were 70 acres" and had "always assumed there was 70, give or take an acre."

On April 22, 1969, a formal real estate contract was signed by defendants and plaintiff. It makes no reference to acreage. It contains a legal description of the property and sets the price at $154,000. Plaintiff paid $38,000 down, followed by five installments of $7,000 each from November 6, 1969, to November 8, 1971. In early 1972, plaintiff was informed the parcel contained 55 and not 70 acres. Plaintiff then commenced this action. A survey made in October 1972 revealed the tract contained only 50.99 acres (27.16 percent less than 70).

The case was tried to the court, which found defendants unintentionally misrepresented to plaintiff that the parcel contained 70 acres more or less. The representation was made through defendants' execution of the second earnest money agreement and during negotiations by defendants' agent Estvold. The court also found plaintiff entered into the contract in justifiable reliance upon the representation, since the parcel had no visible boundaries and plaintiff had no actual knowledge of the acreage. The court held the contract should be reformed to reduce the purchase price in an amount equal to the deficiency in acreage, namely 19.01

acres, multiplied by the per–acre price of $2,200 contemplated by the parties. The semiannual payments were reduced from $7,000 to $5,000.

Defendants first contend the trial court erred in finding them bound by acreage representations made by Estvold, because the record contains no evidence (1) there existed an agency relationship between Estvold and defendants, (2) defendants authorized Estvold to represent the tract as containing 70 acres, or (3) Estvold in fact made the representation in question to plaintiff or Barker.

■ We first note that defendants' own representation in the second earnest money agreement that there were 70 acres more or less in the tract, in ignorance of its truth, is deemed fraudulent even in absence of intent to deceive, and is itself sufficient evidence to uphold the finding of a misrepresentation inducing formation of the contract. *See Webster v. L. Romano Eng'r Corp.,* 178 Wash. 118, 120–21, 34 P.2d 428 (1934); *Arrowsmith v. Nelson,* 73 Wash. 658, 666–67, 132 P. 743 (1913); Annot., 1 A.L.R.2d 9, 89–95 (1948). Evidence of misrepresentation by an agent of defendants is therefore cumulative at best. We will nevertheless briefly consider defendants' arguments.

■ First, the evidence leaves no doubt an agency relationship existed between Estvold and defendants. When a realty agent obtains oral authority from the owner to find a purchaser for property, a principal and agent relationship is created. *Ewing & Clark, Inc. v. Mumford,* 157 Wash. 617, 620, 289 P. 1026 (1930). Here, the evidence permits no other conclusion than that defendants knew Estvold was a real estate broker, and permitted him to find and negotiate with plaintiff's real estate broker for the sale of the tract. Clearly the sale resulted from Estvold's efforts as a real estate broker. The finding of the trial court as to agency is supported by substantial evidence.

■ Secondly, an explicit authorization from defendants was unnecessary for Estvold to make a binding representation as to the acreage of the tract. The scope of the authority of a real estate broker who is engaged only to find a

purchaser includes at least authority to state the area of the parcel when the area and boundary lines, as in the instant case, are not apparent from inspection. *Yarnall v. Knickerbocker Co.,* 120 Wash. 205, 209–10, 206 P. 936 (1922); *Weinstein v. Sprecher,* 2 Wn. App. 325, 327–29, 467 P.2d 890 (1970); F. Mechem, *Outlines of the Law of Agency* 92 (4th ed. 1952). Since it is clear defendant entrusted Estvold not only with obtaining a purchaser but with all negotiations up to the sale itself, he certainly had authority to state the acreage of the tract.

Lastly, the trial court could reasonably find Estvold made representations to plaintiff's agent Barker that the tract contained 70 acres. Barker testified he had no independent knowledge of the size of the tract, and had inserted the sentence describing it as containing 70 acres more or less in the first earnest money agreement because Estvold had told him the tract was 70 acres. The credibility of Barker's testimony was for the trial court to determine. *In re Sego,* 82 Wn.2d 736, 739–40, 513 P.2d 831 (1973).

Defendants next contend plaintiff had no right to rely upon acreage representations made by them or Estvold. They argue the deletion of the price adjustment clause in the second earnest money agreement was a negation of all prior representations of acreage. Again, we cannot agree. As the Court of Appeals states, we have held reliance by the purchaser upon misrepresentations of acreage by the vendor justifiable when the boundaries were not reasonably ascertainable and the purchaser could not have determined them without a survey. *Dixon v. MacGillivray,* 29 Wn.2d 30, 36, 185 P.2d 109 (1947). The circumstances in the instant case come within the rule as stated in *Dixon.* The additional fact of the deletion in question does not require, as a matter of law, a different conclusion. If in deleting the price adjustment clause in the second earnest money agreement (as drafted by Estvold and signed by defendants), defendants intended to negate prior representations as to acreage, why did they not also delete in the same document the sentence, "Total parcel contains 70

acres more or less"? Plaintiff might reasonably have concluded from the deletion that defendants intended no more than to reject a provision providing the purchase price be adjusted upward or downward for slight or minor variations which might be later found to exist in the actual acreage of the parcel. *See Arrowsmith v. Nelson, supra* at 666–67. The trial court's finding on the element of justifiable reliance is therefore supported by substantial evidence. *Sigman v. Stevens–Norton, Inc.,* 70 Wn.2d 915, 919–20, 425 P.2d 891 (1967).

Defendants' last contention is that the evidence does not support the trial court's finding that the sale was of a specified quantity of land (70 acres) and not a sale in gross. Whether a sale of land is in gross or by the acre depends upon the intention of the parties as determined from the particular circumstances of each case. In this case, testimony of both Estvold and Barker reveals the price of $154,000 was reached by multiplication of the number of acres supposedly contained in the tract (70) by the agreed price of $2,200 per acre. Evidence that the price has been arrived at in this manner is substantial evidence to support a finding of the trial court that the sale was not in gross. *Dixon v. Morse,* 93 Idaho 448, 451, 463 P.2d 284 (1970); *see* Annot., 1 A.L.R.2d 9, 31–32 (1948). In addition, we have held that when the buyer, as here, justifiably relies upon an actual representation of the quantity of land as a fact, the sale will not be in gross. *Arrowsmith v. Nelson,* 73 Wash. 658, 667, 132 P. 743 (1913)(statement tract contains "forty acres more or less" was, under circumstances, representation of quantity as a fact).

We therefore agree with the Court of Appeals that the trial court's finding of fraudulent misrepresentation is supported by substantial evidence.

The remaining question is whether the trial court applied the correct measure of damages in this case. Although we agree with the Court of Appeals that reformation of the contract was not the proper remedy in this case, nevertheless the result reached by the trial court—abatement of the

purchase price and contract payments based upon the deficiency in the acreage and the agreed upon price per acre—is correct.[1]

A similar situation arose in *Ready Sand & Gravel Co. v. Cornett,* 184 Neb. 726, 171 N.W.2d 775 (1969). In that case, defendant represented the property as containing 125 acres. Subsequent to the execution of the sales agreement, a survey showed the parcel contained 119.15 acres. In addition, in a subsequent and separate suit, it was decreed that a third party was the owner of an additional 5.92 acres of the parcel. The vendee, as in the instant case, brought suit in equity to reform the sales agreement and to reduce the purchase price accordingly. Defendant asserted as a defense that where a mistake of the parties in conveying real estate relates to the identity of the property itself, rather than to its description in the contract, reformation cannot be had. The trial court held for defendant. The Nebraska Supreme Court, in reversing the trial court, held that whether or not an action for reformation of the contract for the sale of real estate was established by the evidence, the petition stated a cause of action for equitable relief. "The petition filed in the instant case resembles a suit for specific performance by the purchasers with abatement of the purchase price." *Ready Sand & Gravel Co. v. Cornett, supra* at 733.

■ The holding in the above case is in accord with the general rule as stated in Annot., 153 A.L.R. 4, 34–35 (1944):

[W]here in a sale of land at a specified rate per acre or other area unit the parties are mistaken as to the quantity of the land sold, in that it contains a lesser quantity

---

[1]We do not agree with the Court of Appeals that plaintiff, never having requested it, is now entitled to elect rescission as an alternative remedy. The original complaint prayed for both damages (the excess in installments already paid over the proper amount) and reformation, and the reformation asked—abatement of the purchase price—was in substance a suit for specific performance with abatement of the purchase price. *Ready Sand & Gravel Co. v. Cornett,* 184 Neb. 726, 171 N.W.2d 775 (1969). Under these circumstances, plaintiff, never requesting amendment of its complaint, in effect elected to affirm the contract and waived its right to rescind. *Salter v. Heiser,* 39 Wn.2d 826, 833, 239 P.2d 327 (1951); *Pronger v. Old Nat'l Bank,* 20 Wash. 618, 626, 56 P. 391 (1899).

than contemplated by the parties, and such mistake affects the computation of the purchase price as made by the parties, the purchase price will be abated at the instance of the vendee, even though the shortage in acreage is small.

Courts have held that the abatement of purchase price, at least when the acreage is uniform and unimproved, may be measured by the agreed price per acre multiplied by the number of acres in the deficiency. *Drake v. Eubanks,* 61 Ark. 120, 32 S.W. 492 (1895); *Denman v. Stuart,* 142 Tex. 129, 176 S.W.2d 730 (1944); *Hyde v. Phillips,* 61 Wash. 314, 316, 112 P. 257 (1910); Restatement of Contracts § 365 (1932); Restatement of Restitution § 21 (1937); C. McCormick, *Damages* 699 (1935).

In the instant case, therefore, the trial court did not err in abating a proportionate part of the purchase price, measured as the agreed price per acre ($2,200) multiplied by the deficiency in the acreage (19.01 acres).[2]

Although plaintiff, having proved fraudulent misrepresentation, would ordinarily have the right to additional damages for any lost benefit of the bargain (*Salter v. Heiser,* 39 Wn.2d 826, 832, 239 P.2d 327 (1951); 1 F. Harper & F. James, Jr., *The Law of Torts* 592 (1956)), plaintiff in oral argument before this court in effect waived any such right. It asked this court to accept the measure of damages awarded by the trial court and thus avoid retrial of the damage issue. Under these circumstances, therefore, we need not remand this case for any further determination by

---

[2]Nor should the case be remanded to permit defendants to obtain a reduction in the abatement if the agreed price per acre is more than the market value per acre. As stated by Professor McCormick:

In any event, it seems that the aggrieved purchaser, if he prefers, should be allowed to have his claim measured by the proportion of the price, and the defaulting vendor should not be allowed to insist that he should be liable for less because the buyer made a bad bargain.

C. McCormick, *Damages* 699 (1935). We believe this rule is more consonant with the primary aim in awarding damages in contract cases, which "is to place the injured party in as good a position as if he had received full performance." *Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 30, 442 P.2d 621 (1968).

the trial court. *See Austin v. Dunn,* 176 Wash. 453, 29 P.2d 740 (1934).

The judgment of the trial court is affirmed.

ROSELLINI, HAMILTON, UTTER, and DOLLIVER, JJ., concur.

STAFFORD, J. (dissenting)—The majority has based its opinion upon three types of contact between plaintiff and defendants which are said to result in actionable misrepresentation. My review of the record reveals no basis for that conclusion.

The first type of contact is an assumed actionable misrepresentation by the alleged agent of defendant. The majority opinion is based primarily upon the assumed existence of an "agency" between the real estate broker, Estvold, and the defendants Hopke. In making that assumption the majority has overlooked the fundamental premise that "agency" is not itself a *fact.* Rather, it is a *legal concept dependent upon* the existence of specific required *factual elements. Moss v. Vadman,* 77 Wn.2d 396, 402–03, 463 P.2d 159 (1969) citing Restatement (Second) of Agency § 1(1) (1958). As *Moss* points out, there must be

the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control.

*See also Busk v. Hoard,* 65 Wn.2d 126, 129, 396 P.2d 171 (1964). Absent the required facts of consent and control, "agency does not exist in law." *Matsumura v. Eilert,* 74 Wn.2d 362, 368, 444 P.2d 806 (1968); *Busk v. Hoard, supra* at 129; Restatement (Second) of Agency § 1(1), comments *a* and *b* at 8 (1958); 2A C.J.S. *Agency* § 5 (1972).

It is of interest that the trial court, in what is incorrectly denominated a "finding of fact," makes one and only one reference to broker Estvold as defendants' "agent." Other than that singular use of the word, the trial court set forth nothing to support what should correctly have been designated a "conclusion of law." We are not bound by the trial

court's incorrect designation of the legal relationship as a finding of fact. Findings of fact which are actually conclusions of law will be dealt with as conclusions of law. *Neil F. Lampson Equip. Rental & Sales, Inc. v. West Pasco Water Sys., Inc.*, 68 Wn.2d 172, 174, 412 P.2d 106 (1966); *Kane v. Klos*, 50 Wn.2d 778, 799, 314 P.2d 672 (1957); *see also State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 266–67, 501 P.2d 290 (1972); *Fain v. Nelson*, 57 Wn.2d 217, 219, 356 P.2d 302 (1960). Thus, although the trial court made a singular so–called *factual finding* of "agency," the pertinent inquiry remains whether the legal relationship of "agency" (*i.e.*, a conclusion of law) is supported by findings of fact and they in turn are supported by the evidence. A careful analysis of the record reveals that this conclusion of law is supported by no finding of fact whatsoever. Consequently, it cannot stand. *Freeman v. Stemm Bros.*, 44 Wn.2d 189, 193, 265 P.2d 1055 (1954); 2 L. Orland, *Wash. Prac.* § 308, at 344 (3d ed. 1972).

This shortcoming was recognized by the Court of Appeals. After hearing the appeal on its merits that court, in an order of remand, required the trial court to make specific findings of fact on

> *whether Mr. Estvold was Hopkes' agent* and the per acre representations made by Estvold bound the Hopkes.

(Italics mine.)

The order of remand was entirely proper. *Old Windmill Ranch v. Smotherman*, 69 Wn.2d 383, 390–91, 418 P.2d 720 (1966); *Peterson v. Neal*, 48 Wn.2d 192, 292 P.2d 358 (1956); *Gnash v. Saari*, 44 Wn.2d 312, 267 P.2d 674 (1954). In *Bowman v. Webster*, 42 Wn.2d 129, 134–35, 253 P.2d 934 (1953), we said:

> It is necessary . . . for the trial court to make the ultimate findings of fact concerning all of the material issues. . . .
>
> . . .
>
> The remedy most frequently applied has been to reverse and remand with instructions to the judge . . . to

make and enter the necessary findings of fact and conclusions of law, to be followed by the entry of judgment from which either party may appeal.

Subsequently the trial court prepared "Supplemental Findings of Fact." But, the findings clarified nothing. Once again the sole reference to the subject of "agency" was a similar legal conclusion:

Norris M. Estvold was the agent of defendants Hopke in the sale of the real estate . . .

Thus, as with the original findings of fact, the pertinent inquiry still remained whether the legal conclusion of "agency" was supported by findings of fact and they in turn by the evidence. As indicated earlier, consent and control are the essential elements of "agency." If no factual pattern exists which gives rise to the legal relationship of "agency," none exists. *Moss v. Vadman, supra; Busk v. Hoard, supra;* Restatement (Second) of Agency § 1 (1958).

Unfortunately, the Court of Appeals did not again remand the cause with another order requiring the necessary findings of fact. Rather it proceeded, in the absence of findings of fact required to support the legal conclusion of agency, to set forth its own facts in support of the legal relationship. The majority herein has fallen into the same trap. Rather than remand the cause for proper findings of fact, it has gleaned from the Statement of Facts a few "facts" which presumably would support such a legal relationship. But a review of that Statement of Facts makes it clear it would be equally possible to recite other facts which would affirmatively establish a lack of agency. There is even evidence which indicates that broker Estvold might have been an agent of plaintiff Myers. In the absence of findings of fact the majority should not have relied upon a recitation of its own preferred facts in support of its position. As we said in *Stringfellow v. Stringfellow,* 56 Wn.2d 957, 959, 350 P.2d 1003, 353 P.2d 671 (1960):

Factual disputes are to be resolved by the trial court. The Washington constitution, by Art. IV, § 6, vests that power exclusively in the trial court. The power of this

court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not.

*See also Oil Heat Inst. v. Mukilteo,* 81 Wn.2d 7, 9, 498 P.2d 864 (1972).

At the very least, the majority should have reversed the judgment and remanded the case to the trial court for the purpose of making findings of fact material to the determination of "agency." On the other hand, if the majority felt further remand would not be productive, the trial court and Court of Appeals should have been reversed outright. Plaintiff, Alexander Myers and Company, Inc., had the burden of establishing the existence of an agency. *Moss v. Vadman, supra; Walker v. Pacific Mobile Homes, Inc.,* 68 Wn.2d 347, 413 P.2d 3 (1966). When the findings of fact are silent upon a material point, the facts are deemed to have been found against the party having the burden of proof. *Ingle v. Ingle,* 183 Wash. 234, 246, 48 P.2d 576 (1935); *Geneva Water Corp. v. Bellingham,* 12 Wn. App. 856, 866, 532 P.2d 1156 (1975); *Baillargeon v. Press,* 11 Wn. App. 59, 521 P.2d 746 (1974). Thus, plaintiff must bear the brunt of the trial court's failure to make the necessary findings of material fact.

Next the majority contends express authorization from defendants Hopke was not required to enable Estvold to make binding representations as to the size of the tract. An agent, it is said, has the power to act within the scope of his authority. I agree with this abstract legal principle. However, there are no findings of fact to support the legal conclusion of agency and therefore the principle does not apply to this case. The majority's position is not well taken.

The second ground of actionable misrepresentation is based upon an asserted direct contact between plaintiff's agent, Mr. Barker, and Mr. Hopke. Mr. Hopke is alleged to have told Mr. Barker the property contained 70 acres. The statement of facts does disclose the following comment by Mr. Barker concerning how he learned there were 70 acres: from "Norrie [Mr. Estvold], and in conversation with Mr.

Hopke." That is the sole reference in the case to a direct contact between Mr. Barker and defendants.

However, the trial court made no finding of fact concerning such a *direct* contact. Rather, it relied solely on the theory of agency. This so–called "fact" appears for the first time in the majority opinion unsupported by any finding of fact made by the trial court. We are limited to ascertaining whether a finding of fact is supported by substantial evidence. *Stringfellow v. Stringfellow, supra; Oil Heat Inst. v. Mukilteo, supra.* Since there is no finding of fact touching the subject of direct contact the majority should not have assumed such a fact in reaching its conclusion. Rather it should have remanded the cause to the trial court for determination of that factual issue as we did in *Old Windmill Ranch v. Smotherman, supra; Peterson v. Neal, supra; Gnash v. Saari, supra;* and *Bowman v. Webster, supra.*

The third and last contact relied upon by the majority is an assumed actionable misrepresentation stemming from statements contained in the earnest money agreements.

The first earnest money agreement dated February 14, 1969, was prepared by Mr. Barker, plaintiff's agent. It contained a legal description followed by the expression "Total parcel to contain 70 acres more or less." The price was set at $154,000, without mention of a per acre cost, and closed with the sentence: "Purchase price to be adjusted at the rate of $2,200.00 per acre in event survey reveals more or less than 70 acres." The agreement was signed by Richard Myers, Vice–President and later President and General Manager of plaintiff company. However, defendants rejected it because it provided for insufficient interest.

Subsequently, defendants were presented with a second earnest money agreement dated March 3, 1969. Basically it was identical to the first except for the provision of a higher rate of interest. Before signing it, Mr. Hopke used a red pencil to strike out the sentence which read: "Purchase price to be adjusted at the rate of $2,200.00 per acre in event survey reveals more or less than 70 acres." Thereafter

the Hopkes initialed the deletion and signed the agreement. Concerning the deletion, Mr. Barker, plaintiff's agent, said:

He [Mr. Hopke] was unwilling to guarantee an adjustment on the acreage because he indicated he wanted a fixed price on the property . . .

Richard Myers, plaintiff's principal officer in the negotiations, saw the deletion and signed the agreement with the price adjustment clause deleted. The sentence "Total parcel to contain 70 acres more or less" remained in the earnest money agreement.

On April 22, 1969, the defendants and plaintiff executed a formal real estate contract. It is significant that the contract contained only the legal description and price. No reference was made to the tract containing "70 acres more or less." In fact, there was no reference whatsoever to acreage.

Plaintiff paid $38,000 down followed by five installments from November 6, 1969, to November 8, 1971. Thereafter, a survey revealed the tract contained only 50.99 acres and plaintiff commenced this action.

The majority acknowledges that defendants' alleged representation of 70 acres more or less was made in ignorance of the truth. But, they say, even in the absence of an intent to deceive, this is sufficient to uphold a finding of misrepresentation. I agree. But, I disagree with the further conclusion that assumes the misrepresentation amounted to actionable fraud.

Fraud has nine essential elements. *Beckendorf v. Beckendorf,* 76 Wn.2d 457, 457 P.2d 603 (1969); *Puget Sound Nat'l Bank v. McMahon,* 53 Wn.2d 51, 330 P.2d 559 (1958). One of the essential elements is plaintiff's *right to rely* on defendants' representation. Thus, more is required than mere reliance upon an alleged misrepresentation. Plaintiff had the burden of establishing, as a part of its case, that it had a *right to rely* upon defendants' representation. *Fleischman v. Hockett,* 49 Wn.2d 328, 301 P.2d 166 (1956); *Rummer v. Throop,* 38 Wn.2d 624, 231 P.2d 313 (1951). Further, the right to rely must be established by

*clear, cogent* and *convincing* evidence. *Beckendorf v. Beckendorf, supra; Puget Sound Nat'l Bank v. McMahon, supra.*

The term clear, cogent and convincing evidence denotes a quantum or degree of proof greater than a mere preponderance of the evidence. *Holmes v. Raffo,* 60 Wn.2d 421, 374 P.2d 536 (1962); *Lewis Pac. Dairymen's Ass'n v. Turner,* 50 Wn.2d 762, 314 P.2d 625 (1957); *Cheesman v. Sathre,* 45 Wn.2d 193, 273 P.2d 500 (1954). It is the equivalent of saying that the ultimate fact in issue must be shown by evidence that is highly probable. *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973); *Richards v. Pacific Nat'l Bank,* 10 Wn. App. 542, 519 P.2d 272 (1974).

We are committed to the rule that a trial court's findings of fact will not be disturbed on appeal if they are supported "by substantial evidence." *Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972). But, evidence that may be sufficiently "substantial" to support an ultimate fact based upon a "preponderance of the evidence" may not be sufficient to support an ultimate fact in issue, proof of which must be established by "clear, cogent, and convincing evidence." *In re Sego, supra; In re Estate of Reilly,* 78 Wn.2d 623, 640, 479 P.2d 1, 48 A.L.R.3d 902 (1970). Thus, the question to be resolved at this juncture is not merely whether there is substantial evidence to support the trial court's ultimate determination of the factual issue, but whether there is substantial evidence to support such findings in light of the "highly probable" test, *i.e.,* whether there exists the necessary quantum of proof.

In this light the majority's determination of plaintiff's right to rely is based primarily on the fact that the boundaries of the acreage were not reasonably ascertainable without a survey. But, in considering whether plaintiff had a right to rely upon defendants' representation, other undisputed factors must be considered, for example: Mr. Richard Myers and his father (plaintiff's vice–president and president), their agents and two of their real estate investors walked the property prior to drafting the original earnest

money agreement. Mr. Richard Myers, plaintiff's principal officer, testified that at the time of the transaction he did not know "whether there was 51 or 91 or 70 [acres] . . ." Since the property lines were not easily ascertainable, plaintiff contemplated a survey at some time in the future. Defendants specifically deleted, with bold red lines, all reference to a per acre adjustment in the event a survey disclosed either more or less than 70 acres. All of this was known to Mr. Richard Myers, who signed the earnest money agreement for plaintiff. Further, Mr. Barker, plaintiff's own agent said of the deletion:

> He [Mr. Hopke] was unwilling to guarantee any adjustment on the acreage because he indicated he wanted a fixed figure on the property . . .

Finally, Mr. Richard Myers, acting for plaintiff, knowingly and voluntarily signed the *final contract* which contained no reference to "70 acres more or less" and again omitted any reference to a per acre adjustment in the event of a shortage or overage.

Under these circumstances, how can it be said that plaintiff, a firm of knowledgeable real estate speculators, had a right to rely upon alleged earlier representations made by Mr. Hopke? Where is the clear, cogent and convincing evidence of a right to rely? Under the circumstances before us there is no such right. The law requires one to take some reasonable steps to ascertain the facts for himself. In short, one cannot close his eyes to facts that surround him and proceed blindly proclaiming "I have a right to rely." As we said in *Rummer v. Throop, supra* at 633:

> The inquiry as to vendee's right to rely involves the question of his diligence in ascertaining the facts for himself. It also involves his exercise of care and judgment in acting upon representations which run counter to knowledge within this possession or reach.

*See also Rackham v. Koch,* 125 Wash. 451, 216 P. 835 (1923). Further, we observed in *Fleischman v. Hockett, supra* at 338:

Our conclusion is that where, as in this case, the purchaser is experienced and he has made an investigation of the premises, undeterred by the seller, and has seen all that there is to be seen, he is not entitled to rely upon the misrepresentations of the seller as to the acreage where a subsequent survey reveals that the acreage is only slightly more than one third of the amount represented by the seller. (In this case, 64.1 acres compared to 158 acres.) This discrepancy is certainly so glaring and palpable as to put an *experienced* farmer on notice.

In other words, in an arm's length transaction, the allegedly defrauded party at least must exercise ordinary care for the protection of his own interests. He is charged with knowledge of all facts which would have been discovered by a reasonably prudent person under the same or similar circumstances. The failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party to the transaction. *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 407, 312 S.W.2d 197 (1957). In the same regard *also see* 12 S. Williston, *Contracts* § 1501, at 408 (3d ed. 1970).

After considering the record in the foregoing light, I can only conclude that plaintiff's right to rely upon defendants' representation was not established by clear, cogent and convincing evidence.

The judgment of the trial court should be reversed and the cause dismissed.

WRIGHT, C.J., and BRACHTENBACH, J., concur with STAFFORD, J.